Miller, Adm'r of Pottinger, *vs.* Dorsey, *et al.*

---

# DAVID R. MILLER, Adm'r *d. b. n.* of WILLIAM POTTINGER, *vs.* FREDERICK DORSEY, *et al.*

Payment of a dividend upon a creditor's claim, by an administrator, in the orphans court, does not prevent him, or the administrator *de bonis non*, from pleading limitations or any other defence to the same claim in a court of law.

To the discretion and conscience of the administrator alone is confided the propriety and justice of interposing the plea of limitations to any claim, and with this the orphans court has nothing to do.

Miller, Adm'r of Pottinger, *vs.* Dorsey, *et al.*

Until a court of law shall have definitively pronounced upon the validity of the claims, the orphans court has no power, against the consent of the administrator, to decree their payment.

APPEAL from the Orphans Court of Washington county.

This appeal is from an order of the court below in reference to the distribution of funds in the hands of the appellant belonging to the estate of William Pottinger. The facts of the case are briefly these.

In 1833, Pottinger died leaving no real, and but a small personal estate, upon which one Annan administered, and on the 14th of June 1834, settled his first and final account in the orphans court, (which was approved by that court,) in which he distributed the assets to various creditors, including the appellees, the distribution paying but a small portion of their claims; early in 1855 Pottinger's estate became entitled to a distributive share of that of his mother, and in January of that year administration *de bonis non* thereon was granted to the appellant, Annan having left the State in 1837, and continued a non-resident till his death, some five or six years previous to these proceedings. As soon as appointed, the appellant notified the counsel for the creditors, that he should resist payment of the claims distributed to in the account of his predecessor. He soon after gave the usual notice to creditors, to produce their claims with the vouchers, on or before the 25th of August 1855.

In March 1856, the appellant stated an account, which was approved by the orphans court, showing a balance in his hands of $1147.66, and in June following filed a petition in that court, stating, that though he had given the usual notice, no claim or voucher had been presented by creditors, that he had determined not to allow the claims of those distributed to by his predecessor, and would and did rely upon limitations as a full bar thereto; and asking an order of the court, directing him to distribute the fund, so in his hands, to the children or representatives of the deceased. To this distribution the appellees objected, upon the ground, that the account of Annan as administrator, shows, that the creditors have not yet been paid in full, and insisted that having proved their claims, upon

notice given to creditors by Annan, and had them passed by the orphans court, and distribution made to them by him, they are not required to have the same proved and passed again. They allege that the original claims and vouchers have been lost, and offer to produce copies of them under oath if required. They deny the validity of the plea of limitations as to their claims, and insist that the fund should first be distributed to them. It was admitted that no suits *at law* had ever been instituted on these claims.

Upon this petition the court ordered the appellant to settle an account distributing the fund, first to the creditors to whom distribution was made by Annan in his account of June 1834, and the residue, if any, to the personal representatives of the deceased; from this order the administrator *de bonis non* appealed.

The cause was argued before Le Grand, C. J., Tuck and Mason, J.

*Richard H. Alvey* and *Daniel Wiesel,* for the appellant argued.

1st. That the orphans court in passing the decree appealed from, against the consent of the administrator, and in violation of his discretionary power to contest all claims in a court of law, assumed a jurisdiction with which they had nothing to do. It was the right of the administrator to refuse to pay the claims until established by a judgment of a competent tribunal, and the orphans court had no power to coerce payment of any claim however authenticated. If the administrator refuses payment without good cause, his bond is liable. All the powers of the orphans court are derived from statutes: it has no common law jurisdiction, can exercise no implied power, and no jurisdiction except what is expressly conferred upon it. The statutes have given it no power to adjudge the validity of claims, further than to *authorise and approve their payment,* and it has therefore no jurisdiction to adjudicate contested rights of property as between the administrator and creditors, or others, except where, according to statutory provisions, and

Miller, Adm'r of Pottinger, *vs.* Dorsey, *et al.*

then in a different capacity and power, its judges are by consent of both parties constituted arbitrators to settle the dispute. *Act of* 1798, *ch.* 101, *sub-ch.* 15, *sec.* 20; *sub-ch.* 8, *secs.* 12, 18; *sub-ch.* 11.   6 *H. & J.,* 67, *Scott vs. Burch.*   2 *H. & G.,* 120, *Brodess vs. Thompson.*

2nd. The administrator has the exclusive right to plead limitations to any claims against the estate, and having in this case notified the appellees that he would rely on this defence to their claims, the court below was wrong in disregarding it. They should have refrained from any recognition of the claims, and left the parties to their remedies in a court of law where the defence could be made available.   *Act of* 1798, *ch.* 101, *sub-ch.* 9, *sec.* 9.   1 *Gill,* 358, *Bowling vs. Lamar.*   4 *Md. Rep.* 362, *Young vs. Mackall.*   7 *H. & J.,* 14, *Ruff vs. Bull.* That the administrator *de bonis non* could, in the proper tribunal, rely upon this plea of limitations notwithstanding part payment by the administrator, is clear.   There is no difference between a claim against a deceased and a *living* man.   If the latter pays a claim *in part,* it is an admission of its validity at that time, but if the creditor lies by for three years, limitations will surely bar as to the residue.   If Annan had been alive he could have pleaded *limitations* to these claims.   The creditors should have pursued their remedies in a court of law and obtained judgments to affect assets *quando acciderint,* but they did nothing ; they did not even present their claims to the appellant, for more than a year after notice that they would be resisted, and when presented they were not properly vouched and authenticated.   Under such circumstances the appellant was fully authorised and justified by law in making distribution to the next of kin.   *Acts of* 1798, *ch.* 191, *sub-ch.* 8, *sec.* 18, and *sub-ch.* 9, and 1823, *ch.* 131, *sec.* 2.

*Wm. Motter* for the appellees, argued :

1st.  That being called upon to order distribution to the next of kin, it was the court's duty to look to the condition of the estate and ascertain if creditors were paid before directing such distribution, and finding by its own records, that creditors were not paid in full, it could not pass the order asked for.   6

*Md. Rep.*, 347, *Lowe vs. Lowe. Act of* 1798, *ch.* 101, *sub-ch.* 5, *sec.* 6; *sub-ch.* 10, *sec.* 10; *sub-ch.* 11; *sub-ch.* 14, *sec.* 12; *sub-ch.* 15, *sec.* 12, and *sub-ch.* 8, *secs.* 1, 10, 18. *Act of* 1831, *ch.* 315. These provisions of the law show that an administrator can *distribute* only when *all the debts appear to have been paid.*

2nd. That an administration *de bonis non* is but a continuance of the first administration, and such an administrator can make no objections to claims but such as his predecessor could make if still living. That Annan having admitted the justness of these claims, by distributing to them in his account, the appellant is bound by that admission. 7 *H. & J.,* 134, *Gist vs. Cockey.* 7 *G. & J.,* 13, *Hagthorp vs. Neale.* Accounts settled in the orphans courts, in suits relating to matters in them, are *prima facie* evidence in other courts. (3 *G. & J.,* 37, *Owens vs. Collinson. Ibid.,* 389, *Green vs. Johnson.* 3 *Md. Ch. Dec.,* 72, *Mitchell vs. Mitchell.*) And if so in other courts certainly they are equally strong evidence in that court itself.

3rd. That where the administrator and creditors have come into court, and he admits their right, and that admission becomes a matter of record, he holds the character of *trustee* as respects them and the next of kin; the relation of trustee and *cestui que trust* arises between them, and the court is to direct the administration of this trust (*Act of* 1798, *ch.* 101, *sub-ch.* 14, *sec.* 12) by looking to the trust account on its own records, and if it finds these creditors unpaid it cannot order distribution to the next of kin; such was the action of the court in this case.

4th. As to *limitations:* 1st. That these claims having been presented to the original administrator, which were proved and passed, and thus became part of the *record of the trust,* it was not necessary they should be proved and passed and presented anew to the administrator *de bonis non,* who was as well advertised, by the record of the trust which he undertook to execute, of their existence, and that they were unpaid, as of all other facts of the trust. 2nd. That to the extent of the jurisdiction of the orphans court there is an analogy between its proceedings and those of a court of equity. The filing of a

claim in chancery arrests the running of the statute. The creditor filing his claim is considered a co-plaintiff, and until the trust is finally executed by total or partial payment, as far as the assets extend, it is and must be regarded as a continuing trust. *Strike vs. McDonald,* 1 *Bland,* 37, and 2 *H. & G.,* 238. *Post vs. Mackall,* 3 *Bland,* 495. 4 *Md. Ch. Dec.,* 261, *Ohio Life Ins. & Trust Co., vs. Winn & Ross.* 12 *G. & J.,* 36, *Hall vs. Creswell.* 2 *Bland,* 37, *Welch vs. Stewart.* The filing their claims by the creditors, and distribution to them by the administrator, placed the parties in the relative positions of trustee and *cestui que trusts.* A judgment at law could have availed nothing, as it was then evident there were no further assets to be administered. The court would not oblige us to the fruitless and expensive pursuit of a judgment, but will say: your claims stand with the trust, and when assets arise, the administrator, as trustee, must apply them according to the state of the trust, that is to creditors first. In the position of the parties the true state of the case is a pursuit of the *fund,* not the person of the administrator. Again, it may be said, our cause of action did not arise until these new assets fell into the estate, (a fact which neither the administrator or creditors knew, at the time of the passage of the first account, would ever happen,) and not then until this new administration begun, for Annan was out of the State at the time, and either then dead or died afterwards without coming into the State. When our right arose to demand our share of this fund, there was no one in existence, in legal contemplation, from whom it could be demanded, until the administration of the appellant, and we were in time for that. 4 *H. & J.,* 393, *Fishwick vs. Sewell.* 7 *H. & J.,* 17, *Haslett vs. Glenn.* 3rd. That the plea of limitations, technically speaking, is not applicable to the proceedings in the orphans court, and the presumption of payment, arising from lapse of time, if any such arises in this case, is more than overcome by the facts in the record. 1 *Gill,* 358, *Bowling vs. Lamar.*

LE GRAND, C. J., delivered the opinion of this court.

We think the court erred in passing the order appealed from, and therefore reverse its decision.

Admitting the administrator *de bonis non* to have but the rights which were conferred on the person to whom letters were, in the first instance granted, still, this circumstance does not preclude him from objecting to any claim which may be presented against the estate. The payment of a dividend by the original administrator did not preclude him, on the ascertainment of grounds of objection to claims once acknowledged by him, from urging such objection in a court of law. It cannot be pretended, that if an administrator should, after acknowledging a claim against the estate of his intestate, discover that it had been paid, he would be debarred from setting up such fact to defeat the claim. And if this be so, why not the administrator *d. b. n.?* In either case the administrator is, in the first instance, the only judge whether the claim shall be paid or not. To his discretion and conscience alone is confided the propriety and justice of the interposition of the plea of limitations; with this the orphans court has nothing to do.

But it is said, the administrator is a trustee for the benefit of the creditors, and inasmuch as the claims against the estate were once admitted and filed, the statute cannot now run. Without deciding whether or not administration is such a *technical trust* as to prevent the running of the statute of limitations, there is enough in the record to enable us to say, that it is not for us, nor the orphans court, to decide, that the administrator shall not, in a court of *law,* be permitted to avail himself of whatever defences may be within his power. It is not for us to anticipate what will be the character of his defence. It may be the statute of limitations, or it may be payment, or proof that no such debt ever existed. If it should turn out to be the statute of limitations, then the question will be properly presented, whether or not it is a proper plea under the circumstances of the particular case? Until a court of law shall have definitively pronounced on the validity of the claims, the orphans court has no power against the protestation of the administrator *d. b. n.*, to decree their payment. The act of Assembly gives to him the right to withhold a sum sufficient to meet all contested claims. After reserving such sum as, in his judgment, is sufficient for the purpose, the orphans court can make

distribution of the remainder of the estate to those entitled to it. To the end that the claimants may commence their proceedings in a court of law, and that distribution may be made in the manner indicated, we reverse the order of the orphans court and remand the cause for further proceedings.

*Order reversed, and cause remanded*
*for further proceedings.*