## JAMES H. FLEDDERMAN *vs.* CATHARINE A. FLEDDERMAN, EXECUTRIX.

*Res Judicata—Decree Dismissing Bill Absolutely and Not*
*Without Prejudice—Appeal—Hearing on Bill and An-*
*swer.—Rule of Court as to Testimony and Hearing—*
*Erroneous Construction of Rule—Executor Not*
*Authorized to Bind Estate by Promise to*
*Pay Claim Adjudicated in Favor ·*
*· of Decedent.*

A decree passed on bill, answer and pleadings may constitute
as effective a bar to another suit for the same cause of ac-
tion as a decree made after testimony taken.

But a decree dismissing a bill for want of prosecution, with-
out prejudice, is not a bar to a new bill for the same cause.

When a decree dismisses a bill absolutely when it should have
been dismissed without prejudice, the plaintiff has a right
to appeal if he does not mean to acquiesce therein.

A rule of the Equity Courts of Baltimore City provides that
after the general replication has been entered to an answer
of the defendant, or issue joined on a plea, either party may
apply to have the cause set for hearing, and unless within
five days after service of notice of such application leave to
take testimony be asked by either party, the case shall be
placed upon the trial calendar and be heard upon the plead-
ings. *Held,* that if a case is set for hearing and leave to
take testimony is asked by either party, and neither party
takes any, the Court may proceed to hear the case on the
pleadings without further delay.

If an erroneous construction be placed upon a Rule of Court,
in consequence of which a certain order is passed, the rem-
edy of the party aggrieved is by appeal, but the order is
valid unless reversed on appeal.

When a decree, after stating that the cause standing ready for
hearing was considered on bill and answer, dismisses the

bill, that is an adjudication that the answer denying the averments of the bill was taken to be true at the hearing.

A. filed a bill in equity against B. to set aside a transfer of property and for an accounting concerning the alleged indebtedness of B. to him. B. answered the bill, and after a replication was filed, B. asked for leave to take testimony in open Court, which was granted by an order directing that testimony be taken and final hearing had on November 12th. This order was served on A.'s solicitor. Then, on November 12th, the Court made the following decree: "The above cause standing ready for hearing and being considered on bill and answer, and the plaintiff not appearing in Court, and no evidence being offered to sustain the allegations of the bill, and the answer of the defendant denying the equities of the bill," it is adjudged and decreed that the bill be dismissed. A rule of the trial Court provided that after a general replication to an answer either party might have the case set for hearing, and unless leave to take testimony be asked by either party, the case should be placed on the trial calendar and heard upon the pleadings. *Held,* that since neither party took any testimony on November 12, the Court was authorized to hear the case then on the pleadings.

*Held,* further, that the decree in effect declared that the cause was ready for hearing; that it was considered on bill and answer; that since the answer denied the equities of the bill the bill was dismissed, and that this was a final decree passing upon the merits of the cause as they appeared from the bill and answer.

*Held,* further, that if the decree was erroneous in dismissing the bill absolutely and not without prejudice, or for want of prosecution, the plaintiff should have appealed, and not having done so, the decree is final and a bar to another suit for the same cause of action.

A party in whose favor a decree or judgment has been rendered may waive that fact as a defense against another suit for the same cause of action by not relying on it. But the question whether he would be liable on a subsequent promise to pay a debt so adjudicated in his favor does not arise in this case. *Quære de hoc.*

An executor or administrator has no authority to bind the estate of the decedent by a promise to pay a claim which had been adjudicated in favor of the decedent in his lifetime.

If an executor or administrator, after admitting that a claim against the estate of the decedent was one proper to be paid, discovers that the claim is such as ought not in justice to be charged on the estate, his previous admission of it does not preclude him from making the defense.

*Decided January 14th, 1910.*

Appeal from the Baltimore City Court (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and URNER, JJ.

*William L. Marbury* and *William L. Rawls,* for the appellant.

By admitting certain testimony over the objection of the defendant below, appellee herein, the Court below ruled with the appellant upon the following propositions:

1. That the plaintiff James H. Fledderman, the appellant herein, was competent to testify as to conversations had with his mother, the defendant below, after her appointment as executrix of the estate of Henry G. Fledderman, deceased, in which she admitted that the claim sued for in this case was justly due to her son, the appellant herein, from the said estate, and in which she promised to pay the said claim so due and owing out of the proceeds of said estate.

2. That this acknowledgment by the executrix was sufficient to remove the bar of the Statute of Limitations and was also competent evidence to establish the existence of the debt.

3. That although the bill of sale offered in evidence, dated October 11, 1899, and the assignment of lease of the property No. 14 East Baltimore street, dated October 11, 1899. were both absolute on their faces, yet as the evidence showed

that the transfer of the property, business and interest thereunder was only intended as security for a debt due by James H. Fledderman to his said father, Henry G. Fledderman, an equitable duty arose after said Henry G. Fledderman had reimbursed himself out of the proceeds of the property, business and interest so transferred, to pay over and return to the said James H. Fledderman the excess, if any, realized from the sale of said property, business and interest, over and above the debt due by the said James H. Fledderman, to his said father, Henry G. Fledderman.

4. That although this duty of Henry G. Fledderman to return said excess, over and above the debt due him by his said son, James H. Fledderman, was an equitable duty and one which ordinarily could only be enforced in a Court of equity, yet the subsequent acknowledgment of the executrix of the estate of Henry G. Fledderman that there was an excess in her hands as such executrix due and owing to said James H. Fledderman, and her promise as such executrix to pay said excess so acknowledged to be due, existing and owing, converted the equitable duty before mentioned into a legal duty, and that the same could be enforced by an action at law, in assumpsit, for money had and received.

It will be seen that the only ground, so far as this Record discloses, upon which plaintiff's recovery was defeated was that the subject-matter of his present suit had been finally adjudicated in a former proceeding. The correctness of this ruling upon the question of *res judicata* is therefore the only question now before the Court.

That the decree offered in evidence in this case is not a bar to this proceeding because it shows upon its face that it was not a decision upon the merits of the case in which it was passed, and further, that it was not passed after a hearing of the case or upon a submission of the case without a hearing, one or the other of which was necessary in order for the decree to become a bar to a subsequent suit upon the same matter.

The legal propositions involved in the above statement are.

*First*—That in order for a decree to be a bar to a subsequent suit upon the same subject-matter it must appear: (*a*) That it was passed after a hearing; (*b*) That it was a determination of the merits of the controversy.

*Second*—That where it appears upon the face of the decree offered as a bar that the plaintiff failed to appear at the hearing or did not agree to a submission of the case without his appearance a dismissal of the bill under these circumstances amounts to a dismissal for want of prosecution, which has the effect only of a *non pros.* in a Court of law, and is not a decision upon the merits after a hearing so as to make the decree a bar to a subsequent proceeding by the plaintiff upon the same subject-matter.

It will avail nothing that the decree in question in addition to saying that the plaintiff did not appear, also says that the Court considered the case upon the pleadings for, when it is disclosed upon the face of the decree that the plaintiff did not appear, all efficacy of the decree as a bar to a subsequent suit is destroyed, because the fundamental requisites of this defense are made impossible of existence, namely, a hearing and a decision upon the merits.

The books show that from the earliest times under the English practice there has been recognized the right upon the part of the plaintiff in an equity suit to do two things with regard to the disposition of his case: 1st. To dismiss it under order of Court at any time before decree and this order is obtained as of course; 2nd. To make default at the hearing and thus have his bill dismissed.

The effect of a decree when the plaintiff pursued either of the above methods to obtain a dismissal of his suit was to leave him free to bring another suit upon the same subject matter. In other words, the effect of the dismissal was identical with that of a non-suit at law, and the decree was not a bar to a subsequent suit.

It was entirely optional with the plaintiff to pursue either of the courses above enumerated to get his case out of Court,

and the result of pursuing either course was the same. *Curtis*
v. *Lloyd,* 4 Mylne & Craig, 194.

"If at the time of the hearing a plaintiff in equity is not
ready to go on and the Court refuses to grant further time
he may move for an order dismissing his bill which should
be granted upon payment of costs; if he does not do so the
defendant is not entitled to a decree upon the merits, but can
only have the bill dismissed for want of prosecution, and such
a dismissal like a dismissal upon the plaintiff's motion is not
a bar to a new bill." *Kempton* v. *Burgess,* 136 Mass. 193.
See also *Badger* v. *Badger,* 1 Clifford, 245; *Rosse* v. *Rust,* 4
Johns. Ch. 300; *State ex rel Kane* v. *Larrabee,* 3 Pinney
(Wis.) 166; *Baird* v. *Bardwell,* 60 Miss. 164; *Porter* v.
*Vaugh,* 26 Vt. 625; *Sayles* v. *Tibbits,* 5 R. I. 91; *Lodenbach*
v. *Collins,* 4 Ohio St. 259.

The rule with reference to presumption as to the finality
of decrees, as stated by JUDGE McSHERRY in *Martin* v.
*Evans,* 85 Md. 11, is that where the decree is absolute on its
face there is a conclusive presumption that it was passed
upon the merits. It is not important here, but for the sake
of accuracy it is proper to state that all the cases cited by
JUDGE McSHERRY to support his statement of the rule, an-
nounce the rule to be that where a decree of absolute dis-
missal is passed after a hearing it will be presumed to be
upon the merits. There is no possible doubt that JUDGE
McSHERRY did not mean to disregard this qualification as to
a hearing. In the case he was then deciding there had been
the fullest sort of a hearing and there was no question of that
kind in the case.

This has no bearing here because it is stated in the decree
now before the Court that the plaintiff did not appear upon
the day set for the hearing and that no one appeared repre-
senting him. These recitals appearing in the decree itself
entirely exclude and overcome all presumption, and we sub-
mit, further show that no hearing or decision upon the merits
within the rule of *res judicata* was had or made or could have
been had or made.

It may be contended by the appellee that in addition to saying that the plaintiff failed to appear the decree goes further and recites that the Court considered the case upon bill and answer and, therefore, it amounts to a decision of ·the merits within the rule making a former decree a bar. It will be seen from our aforegoing argument that this entirely begs the question. When the Court recites in its decree that the plaintiff failed to appear, it states a fact which under the authorities before quoted put it beyond the power of the Court to determine the merits of the controversy so as to be a bar to a subsequent suit. The plaintiff simply defaulted at the time of the hearing and to this the Court could give no other effect than that of a *non pros.* at law. Further, when the plaintiff failed to appear on the day set for the hearing, a hearing was rendered impossible under the circumstances of this case, he not in any way having waived his appearance, for under the authorities before quoted in the event plaintiff failed to appear there could be no hearing and consequently no determination of the merits of the case so as to bar a subsequent suit for the same matter.

But we do not concede that this decree was intended to convey the idea that the merits were decided. Under the circumstances disclosed by the decree the Court was bound to dismiss the bill for want of prosecution, and it was perfectly proper for it to consider the pleadings for the purpose of seeing whether any right had accrued to plaintiff by reason of the pleadings themselves. It might well happen in some cases that the plaintiff would have rights under the pleadings alone which even in case of his default the Court ought to protect. It may seem unreasonable that the Court should be so careful about the rights of defaulting plaintiffs, but such seems to have been the practice under the general rules of procedure. 1 *Daniel, Ch. Prac.,* 805.

The mere absence of plaintiff might not constitute a default within the rule rendering a decree upon default of plaintiff ineffective as a bar to a further suit. He might perfectly well before agree to dispense with his own presence

as he might submit the case in advance and waive a formal hearing. Such was the case of *Royston* v. *Horner,* 75 Md. 565. There the parties agreed to submit the case, and agreed to a decree dismissing the bill after the submission. This was as effectual a hearing as could have been given the plaintiff. He had his hearing when he agreed to submit the case without argument, and again when he agreed to a dismissal of his bill. It does seem to us idle to discuss a case such as *Royston* v. *Horner* in connection with this case. Plaintiff here never submitted his case for decision on the pleadings, and never agreed to the passage of a decree. He relied in legal contemplation upon the right which the law gave him to have his bill dismissed for want of a prosecution, and by doing this he only gave the Court the power to dismiss it so as not to be a bar to a subsequent suit.

There is nothing in this case which can be construed into anything other than a pure default, such as that spoken of in all the cases in connection with dismissals for want of prosecution.

It was the view of the learned judge below, as we understood him, that Equity Rule No. 3 applied to the case in the Circuit Court, and by reason of its operation that Court had the power to consider the case upon the pleadings upon the day the case was set for hearing, and to finally dispose of the case upon its merits even though the plaintiff did not appear. In other words, that in a case where Equity Rule No. 3 operates the Court has the same power to finally dispose of the case as it would have in a case where the parties had submitted the case for decree upon the pleadings.

The appellant's contentions are: 1st. That the conditions necessary to bring Equity Rule No. 3 into operation did not exist in the case in which the decree offered as a bar in this case was passed, and that it could in no way affect the case in the absence of these conditions.

2d. That even if Equity Rule No. 3 operated upon the case in the Circuit Court in which the decree offered in evidence was passed, its sole effect was to get the case down

for a hearing upon the pleadings, and that plaintiff's default at the hearing provided for by this rule is just the same as his default at a hearing apart from the rule, namely, to give to the Court only the power to dismiss the bill for want of prosecution.

The true object of that rule is to dispose of cases upon the pleadings if no application is made by either party to take testimony, and if application to take testimony has been made by either party, then the rule can never operate. In this case both parties in effect had made application to take testimony, and Rule No. 3 was forever excluded from operation upon the case.

Not making any provision for default the rule leaves the default to be governed by the existing general rules of equity. In other words the rule under consideration stops when the case is put down for a hearing upon the pleadings, it does not go further and say that the case may be determined by the Court upon the pleadings if the plaintiff makes default at the hearing provided for. No one can read any such power or authority into the rule. *Rust* v. *Roose,* 4 Johns. C. 300.

Granting for the sake of the argument, that the decree rendered in the Circuit Court was passed after a hearing, and was a decision upon the merits, still it is not a bar in this case, because here it is shown by the evidence that after said decree was rendered the defendant, appellee herein, acknowledged that the debt sued for in this case was due and promised to pay the same.

The right to plead *res judicata* is just like any other right and may be waived and otherwise dealt with by the party having it as he pleases. In the case of *Cook* v. *Vimont,* 22 Kentucky (6 T. B. Monroe), 284, this very question was decided. See also *Wilson* v. *St. Louis, etc., R. R. Co.,* 87 Mo. 431.

In *Van Fleet on Res Judicata,* 380, the law is stated in the same way: "A judgment in favor of the defendant, if he afterwards admits the justness of the claim and promises to pay it, is no defense to a suit on the new promise."

*Alonzo L. Miles* and *W. Trickett Giles* (with whom was *Luther E. Mackall* on the brief), for the appellee.

Where a defendant asks leave to take testimony before the Judge, instead of before an examiner, and the Court fixes a day for the taking of the testimony, and for the hearing of the case, the plaintiff is bound to take his testimony then or not at all; and if he fails to take his testimony then, or to get an extension of the time, the defendant, as if before an examiner, has the right to take his testimony or to waive his right to do so, and have the case heard upon the pleadings.

Since in this case, leave to take testimony before the Judge was asked and a day was set for the taking of the testimony, and for the hearing of the case, and the plaintiff failed to take his testimony at that time, or to get an extension of the time, the Court had the right to hear the case upon defendant's testimony, if he took any, or upon the pleadings, if he did not; and that since defendant did not take any testimony, the Court had the right to hear the case upon the pleadings; and having so heard it, and having after the hearing and a consideration of the case upon bill and answer, passed a decree dismissing the bill, without any qualification, such decree is final and the case cannot now be reopened. *Martin* v. *Evans,* 85 Md. 12.

· The true object of the Equity Rule 3 is not merely to dispose of cases upon the pleadings, if no application is made to take testimony, but to dispose of them upon the pleadings if no testimony be actually taken.  The object of the rule is to enable either party to have a case heard and disposed of speedily; and to this end, enables either party to have it set down for hearing, gives both parties an opportunity to take testimony, and provides that unless they avail themselves of this opportunity the case shall be heard upon the pleadings. Nothing is gained by a mere application to take testimony; that does not give the Court any more information than the pleadings themselves; and if such application will suspend the operation of the rule and prevent a hearing, then the rule is worse than meaningless, for not only will it not advance

the hearing of a case, but by merely asking leave to take testimony and failing to take it, one of the parties to a case may, under the authority of this rule, actually delay, instead of advance, the hearing.

The circumstances under which the decree in the former case was passed bring it exactly within this rule. An issue had been joined upon the pleadings; one of the parties (the defendant) had the case set for hearing and when the time for hearing was reached no testimony was before the Court. It follows, therefore, that, under the language of the rule, the case was to "be heard upon the pleadings. The decree, by its very terms, shows that the case stood ready for hearing, and was heard and considered on bill and answer, and that upon such hearing the bill was dismissed. The Court, therefore, having the right to hear the case upon the bill and answer, and having so heard it and rendered its decree, such decree is a final hearing upon the merits and is a final determination of all matters in controversy. This, we respectfully submit, is conclusive of this case.

In *Royston* v. *Horner,* 75 Md. 567, the case was submitted by the parties for a hearing without any testimony and merely upon the pleadings, and it was held that a decree of dismissal passed upon such hearing, and, so far as the report discloses, in the absence of the plaintiff, was final. So here the plaintiff, by failing to take testimony, impliedly submitted the case for hearing without his testimony and upon the pleadings, and, likewise, we think the decree of dismissal passed upon such hearing is final, whether the plaintiff was present at the hearing or not. The case of *Rust* v. *Rosse,* 4 Johns. Ch. 300, as well as the other cases cited by appellant, are, in the teeth of *Royston* v. *Horner, supra.*

Even if a new promise would be binding if made by the debtor himself, we submit that such new promise when made by the executor of the debtor cannot be binding. It has been held in some jurisdictions that an executor is not bound to refuse to pay a debt barred by limitations, but may, in his discretion, pay the same; and it has likewise been held that

a promise by an executor to pay is binding, the original con-
sideration being sufficient to support the new promise. But,
so far as we are aware, it never has been held that an executor
can, without any consideration moving to the estate, create a
new debt which will bind the estate or submit to a Court of
law a case that was finally adjudicated by a Court of equity
during the lifetime of his testator.

Furthermore, even if the executrix acknowledged the debt,
this does not preclude her, subsequently, on ascertaining the
grounds of objection to the claim, from urging such objection
in a Court of law (*Miller* v. *Dorsey,* 9 Md. 317, 323). There
is no evidence whatever in this case that defendant at the time
she is alleged to have acknowledged this debt and promised to
pay it, had any knowledge that it had been once adjudicated
by a Court of equity. In the absence of such evidence, an
acknowledgment of debt will not preclude her, on ascertain-
ing that it had been so adjudicated, from setting up such ad-
judication in a Court of law. *Miller* v. *Dorsey, supra.*

BOYD, C. J., delivered the opinion of the Court.

This is an action of assumpsit by the appellant against the
appellee—the declaration containing six common counts, in-
cluding one for money had and received by the defendant's
testator for the use of the plaintiff. With the declaration
was filed an open account by which the defendant is charged
with various items, amounting with interest thereon to $45,-
637.95. The contention of the plaintiff is that he transferred
to his father in the autumn of 1899 his merchant tailoring
business, including the merchandise, cash, furniture, fixtures
and accounts, and assigned a lease, to secure an indebtedness
due by him to his father, that it was not intended to be an
absolute transfer, and, inasmuch as his father was paid in
full what he owed him, he was entitled to be repaid the above
amount. General issue pleas, together with one of payment
and one of the Statute of Limitations, were filed. Issue was
finally joined and a trial of the case resulted in a verdict for
the defendant. The Court granted a prayer to the effect that

a decree passed by the Circuit Court of Baltimore City on November 12th, 1900, in a case wherein the appellant was plaintiff, and the defendant's testator was defendant, was conclusive against the right of the plaintiff to recover.

The appellant filed a bill in equity against his father to have the bill of sale, which he had given to secure as he alleged what he owed his father, annulled and set aside, to require an accounting by the defendant, and to compel him to pay over to the plaintiff all sums received by him, and to restore and to deliver unto him the lease, the possession of the premises, and all goods and property of every description taken possession of under the bill of sale. It is conceded that the matters involved in the equity proceeding were the same as are now sued for, and the principal question is whether the decree passed in that case was a final adjudication of the controversy. The appellant contends that the bill was dismissed simply for want of prosecution, while the appellee claims that it was such a final disposition of the case as to make the defense of *res adjudicata* an absolute bar to this suit.

The decree was as follows: "The above cause standing ready for hearing and being considered on bill and answer, and the plaintiff not appearing in Court, and no evidence being offered to sustain the allegations of the bill, and the answer of the defendant denying the equities of the bill, it is this 12th day of November, 1900, by the Circuit Court of Baltimore City, adjudged, ordered and decreed, that the bill of complaint in this cause, be and the same is hereby dismissed and that the plaintiff pay the costs."

As it is not denied that the bill in equity was intended to recover the money and property sued for in this case, there is no such question before us as is frequently presented in cases of this character, but it is simply whether that decree was dismissed for want of prosecution, or whether it was an adjudication by the Court of the questions involved, on the pleadings. There can be no doubt that a decision of a case on the pleadings may be as effective a bar, as one on testi-

mony. If, for example, a case is submitted on bill and answer the averments in the answer are taken as proven, and hence there can be no logical distinction made between the effect of a decree rendered on bill and answer and that of one entered after testimony is taken.

There are certain general principles on the subject of *res adjudicata* well established in this State, as well as elsewhere, which should be kept in mind in considering the case. In *Royston* v. *Horner,* 75 Md., on page 565, as well as in other Maryland cases, the rule as stated by JUDGE STORY in his *Equity Pleading,* sec. 793, has been approved, that: "A decree or order dismissing a former bill for the same matter may be pleaded in bar to a new bill, if the dismission was upon the hearing, and was not in terms directed to be without prejudice. But an order of dismission is a bar only where the Court has determined that the plaintiff had no title to the relief sought by his bill; and therefore, an order dismissing a bill for want of prosecution is not a bar to another bill." In *Martin* v. *Evans,* 85 Md. 8, the subject was discussed at some length by CHIEF JUDGE MCSHERRY, who stated the general rule to be that: "Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption, according to the great preponderance of decided cases, is, that the issues raised by the proceedings have been disposed of on their merits, and they therefore become *res adjudicata.*" Amongst other authorities cited by him was 6 *Ency. of Pl. and Pr.* On pages 992 and 993 of that volume the principle is thus stated: "A dismissal or non-suit may be upon the merits. It then concludes the parties as to all matters involved in the issue, whether they were actually decided or not. * * * At law the presumption is that a non-suit is merely formal unless it be affirmatively shown to have been upon the merits. The same rule appears to apply generally to judgments of dismissal at law. In chancery the opposite rule obtains, and a general decree dismissing a bill will be presumed to have been upon the merits, and a final settlement of the controversy unless the decree was collusive, although

the decree was pronounced by a divided Court. The presumption attaches unless the statements of the record show that the dismissal was for some cause not going to the merits; and of course the whole record may be examined to find out what was actually decided or might have been decided. * * * To obviate the general presumption of dismissal upon the merits, the dismissal should be stated in express terms to be made 'without prejudice.' Wherever it is not actually upon the merits, the term is used in order to reserve to the parties the privilege of enforcing their rights by subsequent proceedings and to destroy the effect of dismissal as a bar. An absolute dismissal where the dismissal should have been without prejudice is reversible error; and the appellate Court will either reverse and render a decree 'without prejudice' or modify and affirm, or remand the cause with instructions to dismiss without prejudice."

An order was passed on May 21st, 1900, on the bill filed by the appellant against his father, that a receiver be appointed, unless cause to the contrary be shown on or before the 16th day of June, 1900. That was duly served on the defendant, who filed in due time an answer to the bill of complaint, which also showed cause why a receiver should not be appointed. On September 7th, 1900, a general replication was filed, and on the 10th of that month the defendant filed a petition stating that he desired to examine witnesses in open Court and asking an order for that purpose. An order was passed granting leave to take testimony as prayed, and that it be taken as required by the thirty-fifth rule of the Court, which prescribes the method of taking such testimony. On October 6th, 1900, the defendant filed another petition to the same effect, and the Court passed an order granting leave to take testimony under that rule, and added: "It is further ordered that the taking of said testimony and the final hearing be and the same are hereby set for the 12th day of November; 1900." That order was served on the plaintiff's solicitor on the 9th of October. The docket entries also show this entry: "12 October, 1900. Rule hearing for November

12, 1900.  Order fd., copy issued (served on William Colton, solr.).''  The next docket entry is that of the decree above set out.

Rule 3 of the lower Court is as follows: "After the general replication has been entered to the answer of the defendant, or if any issue be joined upon a plea, either party may apply to have the case set for hearing; and unless within five days after service of notice of such application leave to take testimony be asked by either party, the case shall be placed upon the trial calendar and be heard upon the pleadings."  The solicitors for the respective parties differ widely as to the proper construction of that rule, and also as to whether it is applicable at all, and, if so, how far applicable to the facts of this case.

The record shows that a general replication had been entered, and apparently that the defendant did apply to have the case set for hearing.  While the petition of October 6th did not ask to have the case set for hearing, the Court did, on the application to take testimony in open Court, order that it be taken, and that there be a hearing on November 12th.  But if there is any doubt about the effect of that, the entry of October 12, above set out, would seem to establish that it was set for hearing for November 12.  It is true there is no written application for that in the record, but the entry of the rule on October 12th—which was three days after the copy of the order of October 6th was served on the solicitor—is there, and the decree itself states that the case was ready for hearing.  If we treat the application to have the case set for hearing as of October 12th, then leave to take testimony was not asked within five days after service of notice of such application, and if we treat it as made on October 6th, application to take testimony was made at the same time.  As either party has the right to ask leave to take testimony, while it might be somewhat irregular, it is not perceived how injury is done the other party, if the one who applies to have the case set for hearing at the same time asks leave to take testimony.

The appellant must take one horn or other of the dilemma—either that neither side asked to take testimony, as provided under Rule 3, or that the application of the defendant was sufficient. Accepting the latter view, the next question is as to the construction of the rule as applicable to those conditions. If a case is set for hearing, and leave to take testimony is asked by either party, and neither party takes any, can the Court proceed to hear the case on the pleadings without further delay? We are of the opinion that must be answered in the affirmative. It never could have been intended by the framers of that rule that a party could gain time, simply by asking leave to take testimony and then not taking it. The object of the rule manifestly was to prevent unnecessary delay, but if it must be construed to have such effect as is contended for it, the result would be the very opposite of what was intended. The rule, we think, was intended to give either party the opportunity to take testimony, but if not taken, then to dispose of the case on the pleadings.

But after all, are we not to be governed by the construction placed on the rule by the judge who passed the decree, if we can ascertain that from the decree, and not by what we may think is a proper construction of the rule? If that judge erroneously construed the rule, and passed a decree which was not authorized, then the remedy of the plaintiff was an appeal. *Barrick* v. *Horner,* 78 Md. 259; *State, use of Brumer,* v. *Ramsburg,* 43 Md. 333. If he passed a decree which would bar the plaintiff from bringing another suit, when he was only authorized to pass one that would be equivalent to dismissing the bill for want of prosecution, the remedy was likewise an appeal. "An absolute dismissal, when the dismissal should have been without prejudice, is reversible error." 6 *Ency. of Pl. and Pr.,* 993. See also *Griffith* v. *Fred Co. Bank,* 6 G. & J. 424; *McElderry* v. *Shipley,* 2 Md. 37; *McDowell* v. *Goldsmith,* 24 Md. 230, and *Miller's Eq. Proc.,* 332.

We must therefore ascertain what the judge *did* by the decree, as what he had the right to do is not now the ques-

tion. If the statement "and the plaintiff not appearing in Court and no evidence being offered to sustain the allegations of the bill," had not been inserted there would be but little room to question the effect of the decree, under the decisions in this State. It would then have read: "The above cause standing ready for hearing and being considered on bill and answer, and the answer of the defendant denying the equities of the bill," it is adjudged, ordered, etc. Whatever may be said in *Rosse* v. *Rust*, 4 John. Ch. 300, and other cases cited by the appellant, the case of *Royston* v. *Horner, supra,* would seem to be conclusive of that question in this State. The Court quoted from that decree: "This case being submitted on bill, answer and exhibits by agreement of counsel," and went on to say: "This can mean but one thing, that it was submitted for decision in that way. And, when submitted in that way, the Court upon the answer of the defendant denying the allegations of the bill could do nothing but dismiss it; for when a case is submitted on bill and answer, all the averments of the answer, whether responsive to the allegations of the bill or in avoidance of it, are to be taken as true." And then after indicating that the reason the assent of the parties was referred to in the decree was because the costs were disposed of differently from what is usual in a decree on bill and answer which denies the equity of the bill, the Court said: "It may have been without argument, and it is reasonably inferable that it was; but argument is not necessary to make it a hearing, for *it is being heard when what the parties say in the bill and answer is considered by the Court.*"

In the decree now under consideration, the Court not only said the case was "standing ready for hearing," but, "being considered on bill and answer," "and the answer of the defendant denying the equities of the bill." It was therefore declared that it was ready for hearing, that it was considered on bill and answer and that the Court found that the answer denied the equities of the bill. Finding those facts the Court was required to dismiss the bill, just as it was in *Royston* v.

*Horner.* If, as we said in that case, "it is being heard when what the parties say in bill and answer is considered by the Court," how can it be said in view of the recitals in this decree, that *there was no hearing?* There would seem therefore to be no room to doubt, that unless the omission we made above, in reciting the decree, shows the contrary, the judge intended to make it final, and was passing on the merits as he found them from the bill and answer, and of course he knew the effect of deciding the case on bill and answer to be that he must accept the averments in the answer as true.

But of course in considering the decree, we cannot ignore the statement referred to—"and the plaintiff not appearing and no evidence being offered"—and must give it its proper effect. Was not that inserted because the judge considered the action already taken as sufficient to authorize testimony to be taken, and hence, as the plaintiff neither appeared nor offered testimony to sustain the allegations of the bill, under the rule of Court, he was required to decide the case on the pleadings? There was perhaps no necessity for referring to the fact that the plaintiff did not appear, but it may have been that it was inserted in the decree to show that the plaintiff did not ask for further time, or that he was not there to attempt to sustain the bill by his testimony. But whatever the reason, if the presumption is as we said in *Martin* v. *Evans,* then the mere statement that the plaintiff did not appear in Court cannot overcome the presumption raised by the other terms of the decree. If the bill was dismissed because the plaintiff did not appear, then there was no occasion to consider the case on bill and answer, and particularly not to refer to the fact that they were considered. It would only have been necessary to have said, "the above cause standing ready for hearing, and the plaintiff not appearing in Court, it is adjudged," etc. Or if the judge had supposed that he must dismiss the case for want of prosecution, because the plaintiff did not appear and no testimony was taken, there was no reason to say that he had considered the bill and an-

swer, for if he treated those reasons as a cause of default sim-
ply, there was no occasion to consider the bill and answer.

It was argued, however, by counsel for appellant that the
judge could properly examine the bill and answer, to see
whether there was anything in them to require him to retain
the bill, but that could only be necessary on a hearing on the
bill and answer. If, for example, he had found that the an-
swer admitted such allegations of the bill as entitled the
plaintiff to relief he could have granted the relief, although
the plaintiff did not appear. If a plaintiff is in such default
for not appearing as requires or authorizes the Court to dis-
miss his bill, he has no right to require the Court to examine
the pleadings to see whether he is entitled to relief on them.
A defendant in a suit at law may file a plea, which admits
the right of the plaintiff to recover something, but if the
plaintiff does not appear when the case is called, the defend-
ant may ask to have the case non-prossed. The Court would
not examine the papers to see whether the plaintiff was en-
titled to judgment, but would dismiss the case for the de-
fault, if his failure to appear was a default under the rules
or practice of the Court. One of the cases relied on by the
appellant illustrates the point: In *Baird* v. *Bardwell,* 60
Miss. 164, the decree was: "This cause coming on this day to
be finally heard, and the said complainant in person or by
counsel failing to appear, after being duly called, on motion
of counsel for defendant, it is ordered," etc., that the bill be
dismissed. The Court said: "The absence of the complain-
ant in no degree affected the right of the defendants to sub-
mit the case for final hearing. They had the right to do this,
or to have it dismissed for want of prosecution."

So it seems clear to us that the decree shows on its face
that the judge did not intend to dismiss the cause because of
the default of the plaintiff, either in not appearing or not
offering testimony, but he thought that under his construc-
tion of the rule he had the right to decide the case on the
pleadings, and did hear it on bill and answer, and having so
heard it he decided it on the merits, just as much as if the

allegations in the answer had been sustained by proof. The
case of *Royston* v. *Horner,* is conclusive of the latter state-
ment, as it was submitted on bill, answer and exhibits, and
the decree was held to be a bar to another suit. Indeed, if
that were not so, hearing a case on bill and answer would be
of little use.

It may be that the plaintiff could have appeared and dis-
missed the bill, and thereby relieve himself of the effect of a
decree by the Court, but he did not adopt that course, and it
is not necessary to decide that question. If he supposed that
if he did not appear the case would be dismissed without pre-
judice, or for want of prosecution on account of not appear-
ing, and not be precluded from bringing another suit, he
could have had this decree reviewed on appeal, and, if his
present contention had been held to be correct, could have had
the decree reversed or modified, but not having done that he
is bound by it, as passed.

The only remaining question is the effect of the alleged
promise by the defendant, after she qualified as executrix.
It is contended that as there is evidence tending to show that
after the decree was granted, the appellee acknowledged that
the debt sued for in this case was due, and promised to pay it,
the decree is not a bar to this suit, even if it would otherwise
be so. It cannot be doubted that a party in whose favor a
decree or judgment has been rendered can waive the defense
he would be authorized to make, against another suit for the
same cause of action. That may be done by not offering the
record of the former case in evidence. And we do not deem
it necessary to deny that a party who has thus had a decision
in his favor may be liable on a subsequent promise to pay the
debt. The case of *Cook* v. *Vimont,* 22 Kentucky (6 T. B.
Monroe) 284, is a direct decision in favor of the proposition,
although we do not mean to adopt it in all respects. But we
have been cited to no case which has gone to the extent of
holding that the promise of an executor or administrator, to
pay a claim which had been adjudicated and determined in
favor of his testator, or intestate, in his lifetime would bind

the estate.　This case is as good an illustration of the danger of such a rule as could be given.　The testator denied under oath any indebtedness or obligation to the appellant, on account of the claim then and now in controversy, and died on the 27th of January, 1908,—over seven years after the decree was rendered, but the second suit was not brought until after his death.　The appellant claims that after his mother became executrix, and while she was living with him, he repeatedly told her about the claim and she said she knew that his father owed it to him, and promised to pay it.　He admitted that he had filed a bill of complaint against his mother, asking that she be removed as executrix, and that a receiver be appointed to take charge of the estate.　He said: "I filed that bill, but I didn't swear that she was insane.　I only meant that she was not capable of taking care of her money and she is not, and she does not know any more than that book about taking care of finances.　My mother is wholly incompetent of taking care of her money."　Again he said: "I never thought she was insane.　I never made such a statement in my life.　I meant she was mentally incompetent, and does not know anything about business matters or money matters, and is not able to take care of her money, and I was doing that to try and protect her money."　He persuaded her to renounce the will of his father, and the testimony shows that while she lived with him he had considerable influence over her, although at the time of the trial she had nothing to do with him.　Of course we are aware that such matters would not necessarily prevent his recovery, if the defendant could be held on her alleged promise, but they strikingly illustrate the danger of permitting an executor to thus bind the estate of the testator.　If a party can wait for over eight years after a decree of this kind has been entered before bringing another suit, and then, when the other party to the controversy is dead, rely on a promise of the executor to pay what the testator had declared under oath he did not owe, and what had been adjudicated by a decree of the Court in his favor, there would be no protection to the estate of any decedent, but

especially would that be so when it is admitted by the party
seeking to establish a claim that the executrix, upon whose
promise, he relies, is utterly incapable of attending to busi-
ness, and could not even take care of her own money. The
alleged admission that the debt was due would not only con-
tradict the testator, but in effect would prove him guilty of
perjury. It is inconceivable that any jury would believe that
the appellee would make such a promise if she understood
what it meant, and if the testimony of the appellant as to her
competency, was accepted, a jury could not believe she did so
understand it, but if there be no other reason for not per-
mitting a claim to be established by the admission or promise
of the personal representative of the decedent, when it had
been determined to be invalid in his lifetime, public policy
would prevent it. In *Miller, Admr.*, v. *Dorsey*, 9 Md. 317,
LeGrand, C. J., said: "It cannot be pretended that if an
administrator should, after acknowledging a claim against the
estate of his intestate, discover that it had been paid, he would
be debarred from setting up such fact to defeat the claim."
In *Webster* v. *LeComple, Exr.*, 74 Md. 249, a prayer was
offered that if the jury believed that one of the plaintiffs pre-
sented the claim to the executor and requested payment of
it, and that the defendant promised to pay it if said plaintiff
would have it proven and passed, and thereupon he did prove
it and have it passed by the Orphans' Court, then the defend-
ant was bound to pay it, and the jury must find for the plain-
tiffs. The Court in passing on it, after saying that the al-
leged promise that the executor would pay it was made before
he became executor, added: "But an admission or promise by
an executor or administrator is not under all circumstances to
be regarded as binding and conclusive as against the estate.
For though an executor or administrator may recognize a
claim as proper to be paid, yet if he afterwards discovers that
the claim has no legal foundation, or that it is such as ought
not of right and in justice to be charged upon the estate rep-
resented by him, no previous recognition or admission by him
ought to or can preclude him from making the proper de-

fense, and with the same effect as if no such previous recogni-
tion or admission had occurred.   This plain principle of right
and justice is fully recognized by this Court in the case of
*Miller, Admr.,* v. *Dorsey,* 9 Md. 317, 323; and applying it
here, the Court below could not do otherwise than reject this
third prayer of the plaintiffs."    That applies with much
greater force to a claim such as this which had been adjudi-
cated in favor of the testator, when he was alive and able to
defend himself.

It is true that executors and administrators may revive
claims barred by the statute of limitations by promises to
pay or acknowledgments of them, but that it is a different
question.   The claim still exists, and oftentimes justice re-
quires that it be paid, and so with one affected by a discharge
in bankruptcy or insolvency.   But when a case has been tried
on its merits, in the lifetime of the decedent, and decided in
his favor, there is no principle of justice which would require
or permit his personal representative to bind his estate by
admitting the claim to be due or promising to pay it.  No
estate would be sufficiently protected by the law, if it was
permitted.   The law does not favor stale claims, especially
when made after the death of an alleged debtor, and when
one has been passed upon in his lifetime and determined in
his favor in such way as to bar further suit upon it, there
could be no possible reason why his personal representative
should be allowed to become in effect a Court of review, deter-
mine that it was a valid claim and then bind the estate on his
judgment of its validity.   The interests of creditors and dis-
tributees of estates should not be jeopardized by establishing
such a doctrine, and they, and not the executor, would gen-
erally be the sufferers.

So, without further discussion of the questions involved in
this case, we will affirm the judgment.

> *Judgment affirmed, the appellant to pay
> the costs above and below.*