## CHARLOTTE MOODHE *v.* PAUL SCHENKER, ADMINISTRATOR.

[No. 34, January Term, 1939.]

260

*Decided February 22nd, 1939.*

The cause was argued before BOND, C. J., OFFUTT,

PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Hartwell M. King,* for the appellant.

*Michael J. Manley,* with whom was *Samuel J. Gaboff* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This is the second appeal growing out of the matters in controversy between the parties to this suit, which has been presented to this court.

The first appeal was before us in the case of Paul Schenker, Administrator of Estate of Edward J. Coleman v. Charlotte Moodhe, 175 Md. 193, 200 A. 727, 729, and was decided by this court adversely to the appellant in the present case. By that decision we held that the complainant below was not entitled to the relief then prayed, and accordingly, the order of the chancellor overruling the demurrer to her second amended bill of complaint was reversed, and the case remanded to the Circuit Court of Baltimore City, to the end that the demurrer be sustained and the bill dismissed. This was effected by a decree of the Circuit Court of Baltimore City, passed on August 11th, 1938.

The appellee in the former case, who is the appellant in the instant case, thereupon instituted entirely new proceeding in the Circuit Court No. 2 of Baltimore City, in which, with the exceptions hereinafter noted, she filed a bill of complaint predicated, substantially, upon the same grounds as those upon which her former suit was based.

In substance both the second amended bill in the former suit, and the bill filed in the case now before us, set up a state of facts as follows:

That Edward J. Coleman had no close relatives or friends; that he lived in 1400 Rosedale Street, in the City of Baltimore, and that he died on June 17th, 1937. That eighteen months prior to his death, the appellant in the instant case and her husband occupied premises adjoin-

ing the home of the deceased, and that during that period she became acquainted with Mr. Coleman; that he was a sufferer from some facial disease, and due to that condition she became interested in his welfare, and waited upon him and administered to his wants, as gradually his condition grew worse. That on the morning of June 14th, 1937, Mr. Coleman called her from his next door home, and that when she answered the call, she found him in helpless condition, lying upon the floor of the lower front room of his dwelling; that realizing the seriousness of his condition, she then inquired of him whether there were any persons he desired to be notified of his illness, and that his reply was in the negative.

It is then alleged that, on several occasions prior to June 14th, Mr. Coleman had expressed his gratitude to the appellant because of her many acts of kindness to him, and stated that she would be remembered and finally taken care of by him. That on the evening of June 14th, realizing that his death was imminent, he told her of his purchase of a lot in a cemetery, directed her where she would find the receipt for the same, and where she would find his bank books and other important personal papers; all of which were then kept in the same front room to which she had been called earlier in the day, and in which Mr. Coleman remained at the time he gave the above directions. That he also told her that she would find the number of his safe deposit box among said papers; that he desired her to possess and hold all of the books and papers above mentioned, including the contents of his safe deposit box, for the purpose of paying his funeral bill and other expenses, and that the remainder of his estate he wanted her to have in her own right because of the favors and services she had rendered in his behalf. A similarity between the two complaints is found in allegations to the effect that, on June 14th, an unidentified person, assuming to represent the Health Department of Baltimore City, called at the Coleman home, and after examining Mr. Coleman, advised the complainant that the ill man was suffering from a contagious disease, and

warned her not to enter or touch anything in the Coleman home; and that on the following day Mr. Coleman again called the complainant, reaffirmed what he had previously told her about the aforesaid gifts, and advised her to take the indicated articles as her own, as he wanted her to have them; that he then knew death was imminent, as, he said, "he could not live two days longer."

Then follows the first material variance between the former complaint of the appellee, and her complaint as now alleged, in that in the former it was stated: "In obedience to the warning of the doctor as aforesaid, your oratrix refrained from entering his said home." While in the case now before us it is set forth: "Your oratrix did not remove the articles mentioned as she knew that they were safely in her care, custody and possession, since Coleman's diseased condition would not permit his removal of them, nor could any one else do so, since entry to his home was impossible. He had barred the rear door and she was the only person who had a key to the front door and access to the house when desired."

In both bills allegations appear to the effect that at the suggestion of an unidentified physician, with the assistance of the appellant, arrangements were made for the transfer of Mr. Coleman to a hospital, and that he died at the latter place. And in both complaints it is set forth that, as Coleman was being removed from his home, he called the complainant and directed her to get his keys, which he stated would be found in the pocket of his trousers, in the front room of his home.

With regard to the response of the appellant to the above request, however, the incident is stated differently in the respective bills.

In the former case it was set forth that: "Fearing to touch his clothing she refrained to get the keys in question. She was then advised to keep watch upon his home; this she did until further need was no longer required." While, in the instant case, the appellant states: "Having in her possession the key to Coleman's home as aforesaid, she continued her care, custody, control and dominion

over said premises and she retained in her possession the articles therein until she learned of Coleman's death, at which time she notified certain police officers that she had in her possession papers given her by Coleman, among which were instructions relative to his burial. They called at 1400 Rosedale Street and removed therefrom the articles in question and later erroneously delivered them to the said defendant, who is now wrongfully holding them against the claim of your oratrix."

The amended bill in the former case and the bill in the instant case are similar in that each attempts to set up: (a) constructive possession of the bank books and other papers by the complainant as of June 14th, 1937; (b) qualification of the appellee, in the Orphans' Court of Baltimore City, as administrator of Mr. Coleman, and (c) the illegal detention of the above property by the appellee. And, finally, further similarity in the respective complaints is found in that the relief prayed in both submitted for determination the question: Whether the facts above stated constitute a trust in favor of the plaintiff, or a gift *inter vivos* or a gift *causa mortis* to her.

The appellee answered the bill of complaint filed in the instant case, and by that answer denied, generally, all material allegations contained therein. With the answer, a certified copy of the amended bill of complaint filed in the former case was filed as an exhibit; the result of the suit in the former case was set forth, and it was submitted by the respondent that the decree entered in the former case was a subsisting judgment and constituted a final adjudication of the matter alleged in the bill of complaint now before us.

The answer was followed by a petition in which the respondent, after setting forth the defense of *res judicata* as embodied in his answer, submitted that said defense, in effect, was a bar to the suit of the complainant; and requested the chancellor for a separate hearing on the above matter of defense, to the end that the same might be disposed of before the trial of the principal case. Code, art. 16, sec. 173; General Equity Rule No. 18.

A motion *ne recipiatur* to the above petition was filed by the complainant, whereby it was sought to have the petition dismissed, (a) because the cause was at issue upon bill and answer, and (b) because the answer put in issue the question of *res judicata*, and that if the same was intended to be in the nature of a demurrer, plea in abatement or bar, the affidavit to the same should have embraced an averment to the effect that it was not intended for delay.

The chancellor heard the case upon the motion *ne recipiatur*, and the defense of *res judicata* at the same time, and on September 21st, 1938, passed a decree denying the motion, sustaining the defense, and dismissing the bill of complaint, with costs to the defendant. From that decree this appeal is taken.

By the bill of complaint filed in the instant case, the defendant was not required to answer under oath (Code, art. 16, sec. 183) ; but, nevertheless, it appears from the record that he did so answer, and while the form of the affidavit is not set out in the record, it is admitted in the brief of the appellee that it did not cover the objection above indicated.

It is true that under former equity practice in this state pleas were allowed, and that no plea was allowed to any bill or petition unless it was supported by affidavit that it was not intended for delay, and that it was true in point of fact. The same rule applied then, as now, to demurrers. Code 1904, art. 16, sec. 149. That practice, however, is now superseded by the provisions of section 173 of article 16 of the Code, as embodied in General Equity Rule No. 18, adopted by this court.

The above section abolishes pleas in equity, and further provides in part that: "Every defense heretofore presentable by plea in bar or abatement shall be made in the answer, and may be separately heard and disposed of before the trial of the principal case in the discretion of the Court." And by section 179 of the above article, embodied in General Equity Rule No. 20, adopted by this court, it is, among other things, provided that: "The defendant

shall be entitled in all cases by answer to insist upon all matters of defense in law or equity, to the merits of the bill of which he may be entitled to avail himself by demurrer."

It is admitted in the brief of the appellant that under the provisions of section 173 of article 16, *supra,* the appellee was entitled to have the question of *res judicata,* as raised by his answer, in the discretion of the chancellor, set down for separate hearing; but it is contended that the answer on its face should have shown such intention on the part of the respondent. We have been unable to find any authority requiring that practice, and we discern no logical reason why it should be invoked. The matter of a separate hearing on the question was solely in the discretion of the chancellor, and whether the request for such hearing was indicated in the answer or made, as in the instant case, by petition, an order upon which was formally served on the complainant or her solicitor, was a matter of form, rather than substance.

It may be added that the facts in the case of *Hill v. Pinder,* 150 Md. 397, 133 A. 134, cited in support of the above contention, are not analogous to the case now under consideration, for the reason that in that case the respondent in his answer made no such defense, in bar of the action against him, as would have entitled him to a separate hearing under the above section. In that case a combined answer and demurrer was filed. While, in the case before us, no demurrer was filed, for the obvious reason that the question of *res judicata* could not have been raised in that manner; there being no reference whatever in the bill of complaint to any prior litigation between the parties in respect to the subject matter embraced in the present case. *Polish-American Bldg. & Loan Assn. v. Dembowczyk,* 167 Md. 259, 173 A. 254. Apart from the fact that such a motion has no place in equity pleading, there was no error in the ruling by which the motion *ne recipiatur* was denied.

The second and final question presented is whether, under the state of facts herein detailed, the defense of *res judicata* is a bar to the present suit? We think it is.

The theory of the appellant is that, because the former case was disposed of upon demurrer, the decree in that suit, pleaded in bar in the instant case, is not conclusive, in that the case upon which the decree was based was not heard upon its merits.

It is undoubtedly true that cases do arise under some circumstances in which the disposition of them on demurrer is not conclusive; but such cases are confined to those in which the demurrer is directed to formal and technical defects apparent upon the face of the bill. They do not arise in that class of cases in which, entirely void of objections based on form or technicality, the defendant, admitting for the purpose of the demurrer the truth of all well pleaded facts alleged in the bill of complaint, submits, notwithstanding those facts, that the complainant, as a matter of law, is not entitled to a favorable decree.

This general principle is tersely stated in 34 *C. J.* 797, 798, where it is said: "A judgment rendered on a demurrer is equally conclusive, by way of estoppel, of the facts confessed by the demurrer, as would be a verdict and judgment finding the same facts. But a judgment on demurrer, based merely on formal or technical defects and raising only a question of pleading or want of jurisdiction, is no bar to a second action for same cause." To the same effect, in 2 *Freeman on Judgments,* sec. 746, it is said: "A judgment upon demurrer may be a judgment on the merits. If so, its effect is as conclusive as though the facts set forth in the complaint were admitted by the parties or established by evidence submitted to the court or jury. No subsequent action can be maintained by the plaintiff if the judgment is against him, on the same facts stated in the former complaint. Where the judgment is on the merits it is conclusive not only as to every ground of recovery or defense which was presented but as to every one which might have been presented."

The case from which this appeal arises comes to us from a different equity tribunal, but in effect prays the court to determine the identical matters which were the

subject of litigation in the former case. The issues raised and the relief prayed are practically the same; the case being stated differently in the following respects: In paragraph 4 of the bill filed in the present case it is alleged that Coleman "had locked or barred the rear door and from the time he was found lying on the floor as aforesaid, he remained in the said front room where placed by the officers until removed to a hospital." In paragraph 8 the allegation, as above noted, is so framed as to contemplate constructive delivery of the personal property involved in this suit, because of the alleged possession, by the appellant, of the Coleman home.

It is therefore apparent that the bill in the instant case is designed to establish a constructive delivery of the papers representing the money or property set forth in both bills, for the purpose of meeting frailties and omissions inherent in the former allegations of facts, which resulted in a decision of this court adverse to the contentions of the appellant. For the purposes of this opinion it is unnecessary for us to here discuss the essentials to a valid gift, either *inter vivos* or *causa mortis*. That matter was fully and carefully discussed and disposed of in the former opinion. Nor does it arise in this case. We are concerned with the application *vel non* of the doctrine of *res judicata* to the case now before us. And when it is remembered that the basic principle upon which that doctrine rests "is that parties ought not to be permitted to litigate the same issue more than once; that, when a right or fact has been judicially tried and determined by a court of competent jurisdiction, or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties, and those in privity with them in law or estate," the conclusion that the action of the trial court in the case now before us was right is inevitable.

The record reveals that in the former case the original bill was allowed to be amended twice before it found its way to this court. If, with those several and successive opportunities to restate the facts of her case, the com-

plainant failed to allege her sole dominion over the Coleman premises as now contended, assuming, without deciding, that under her present allegations of fact a different conclusion might have been reached, the circumstance, from her viewpoint, is unfortunate. But in spite of that fact, we must and do hold that litigants cannot be encouraged in the practice of failing to allege material facts in a complaint, and meet adverse decisions in manner now submitted.

It is not contended that any allegations appearing in the bill now before us could not have been made in the bill and amendments filed in the former case, as it is not alleged that any facts upon which the present bill is founded were unknown to the complainant when the prior suit was pending. And, as said in *Aurora City v. West*, 7 Wall. 82, 102, 19 L. Ed. 42: "Where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judicatam*, and the former judgment in such a case is conclusive between the parties."

In the case of *State v. Brown*, 64 Md. 199, 200, 1 A. 54, this court quoted with approval the language of the vice-chancellor in *Henderson v. Henderson*, 3 Hare 115, as follows: "In trying this question I believe I state the rule of the court correctly, that where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The pleas of *res judicata* applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion

and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties exercising reasonable diligence might have brought forward at the time." See *Beloit v. Morgan*, 7 Wall. 619, 19 L. Ed. 205; *Whitehurst v. Rogers*, 38 Md. 503; *Trayhern v. Colburn*, 66 Md. 277, 7 A. 459; *Albert v. Hamilton*, 76 Md. 304, 25 A. 341; *Barrick v. Horner*, 78 Md. 253, 27 A. 1111; *Fledderman v. Fledderman*, 112 Md. 226, 76 A. 85; *Mister v. Thomas*, 122 Md. 445, 89 A. 844; *Shirk v. Sneeringer*, 163 Md. 265, 162 A. 520.

For the reasons stated, the decree from which this appeal was taken will be affirmed.

*Decree affirmed, with costs to the appellee.*