## ATLANTIC PHOSPHATE COMPANY *v.* GRAFFLIN.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH CAROLINA.

Argued April 16, 17, 1885.—Decided May 4, 1885.

A contract was made by A., of Charleston, with D., of Baltimore, for the sale and delivery, at Charleston, of 2,500 tons of kainit, to be shipped from August to October, 1880, at a fixed price, cash on delivery of each cargo. The kainit was to come from R., at Hamburg. D. procured G., for a commission paid him by D., to send to R. a credit on London, for the amount of 2,500 tons of kainit, in five cargoes, under which R. obtained the money. G. paid drafts, against the credit, to the amount of the cargoes. The declarations and invoices by R., presented before the consul at Hamburg, named G. as the consignee at Charleston; and the bills of lading made the cargoes deliverable, at Charleston, to G. or his assigns. These papers were sent to A., before any of the cargoes arrived, with an invoice for each cargo, in the shape of a bill, made out thus: A. bought of G., a cargo of kainit, shipped by such a vessel, such a quantity, such a price; and a power of attorney, under which A's agent, as attorney for G., entered the cargoes at the custom-house at Charleston, in February and March, 1881, as imported by G., and made oath that G. was the owner. A. received and accepted the cargoes:
*Held,*

(1.) G. was the owner of the cargoes, and sold and delivered them to A., to be paid for on delivery, free from any claim growing out of the contract of A. with D. or R., for any breach of that contract, as to the time of shipping the cargoes.

(2.) A. was liable to G. for the price of the cargoes, with interest from their delivery.

Action at law to recover the price of articles delivered by defendant in error to plaintiff in error. Judgment below for plaintiff. Defendant below as plaintiff in error brought the

cause here by writ of error. The facts are stated in the opinion of the court.

*Mr. Samuel Lord* for plaintiff in error.

*Mr. C. N. West* and *Mr. James Lowndes* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Circuit Court of the United States for the District of South Carolina, by John C. Grafflin against the Atlantic Phosphate Company, a South Carolina corporation. The complaint sets forth, as a first cause of action, that the defendant is indebted to the plaintiff in the sum of $2,792.60, with interest from February 24, 1881, "the same being due to the plaintiff for a cargo of kainit, sold and delivered by the plaintiff to the defendant," on that day, "at the special instance and request of the defendant." It sets forth four other like causes of action, for cargoes of kainit, amounting to $3,347.55, March 3, 1881; $1,743.37, March 15, 1881; $5,083.53, March 16, 1881; and $2,483.37, March 18, 1881. Bills of particulars are annexed, showing the vessels, quantities and prices. The total amount is $15,450.42; and there is added a cause of action for that sum, with interest, as money advanced, laid out and expended, by the plaintiff for the use of the defendant, at its special instance and request. The cargoes are stated to amount to 2,500 tons.

The answer contains a general denial of all the causes of action. It also avers a purchase by the defendant, in May, 1880, through one Dunan, of Baltimore, representing himself as agent of one Radde, of Hamburg, of 2,500 tons of kainit, to be shipped between August 1, 1880, and October 31, 1880; further purchases by it, afterwards, from the same parties, of 1,550 tons, for future shipment, all by January 1, 1881; the receipt by it of, and payment for, 1,080 tons on the 2,500 tons' contract; its receipt of the five cargoes sued for; and its willingness to pay for the cargoes according to the contracts therefor, subject to its claims for damages for the non-perform-

ance, by the vendors, of the contract of May, 1880, in that the cargoes were not shipped within the time and in the manner specified in the contract, but arrived when the business of the year was over, and when the goods were much depreciated in value; which damages, amounting to $9,586.82, it claims to recoup.

The answer also avers that the defendant purchased the cargoes mentioned in the complaint, at Hamburg, under the contract, and received the same under the circumstances above set forth, and was, from the time of the shipment of the kainit, the owner thereof; that the invoices for all of the cargoes shipped by Radde to the defendant were in the name of Dunan; that, on January 25, 1881, Dunan requested the defendant to return his invoices and substitute similar ones in the name of Grafflin, and it did so, but it never made any new contract, in regard to any of the cargoes, with Grafflin; that it never received any notice of the assignment of the contract or cargoes to Grafflin; that, if Grafflin advanced money on the cargoes, he did so subject to the rights of the defendant under the contract, and was conversant with those rights; and that Grafflin was the real principal in the contract.

To the counter-claim so set up the plaintiff replied, alleging that he, and not Radde, owned the kainit; that it was sold and delivered to, and accepted and received by, the defendant, as the property of the plaintiff, free from the claim made for recoupment; and that he and the defendant never occupied any other relations than those of seller and buyer of the kainit, set forth in the complaint, at the prices agreed to be paid.

The case was tried before a jury, and resulted in a verdict for the plaintiff for the $15,450.42, with interest on the amount of each cargo from the date of its delivery; and there was a judgment accordingly, to review which the defendant brings this writ of error.

The bill of exceptions embodies all the evidence, by a stipulation between the parties, made in this court. There was no dispute as to any material question of fact. The transactions originated in the following letter, dated April 29, 1880, from Dunan, at Baltimore, to Pelzer, Rodgers & Co., at Charleston,

they being the general agents there of the defendant: "Radde cables sell Atlantic 2,500 tons best quality Eagle Mine genuine raw kainit, guaranteed to test not below 24 per cent. sulphate of potash by the German chemist, Dr. Ulex; to be shipped during the summer and fall months—say from August to October inclusive—for $7.50 per ton of 2,240 lbs. in taking Hamburg weights. The kainit to be delivered at your Atlantic Phosphate Company's wharf, Ashley river, port of Charleston, S. C. The price of $7.50 per ton includes cost, freight and insurance to your wharf. From the price, as the quantity is large, I will rebate 10 cents per ton. Terms of payment, cash on delivery of each cargo." Pelzer, Rodgers & Co. replied, by writing to Dunan, on May 10, 1880, as follows: "We will take 2,500 tons of best kainit, as described by you, to test not less than 24 per cent. sulphate of potash, to be delivered at our wharf on Ashley river, at seven dollars $\frac{50}{100}$ per ton of 2,240 lbs."

To enable Radde to send the cargoes to the defendant, the plaintiff, who resided in Baltimore, at the request of Dunan, and for a compensation of one per cent. commission, paid to him by Dunan, sent to Radde, at Hamburg, a credit with Brown, Shipley & Co., of London, for the amounts of five cargoes, under which Radde drew on Brown, Shipley & Co., paying them their commission, and Brown, Shipley & Co. drew on the plaintiff. They received the shipping documents from Radde and sent them to the plaintiff, and he paid their drafts. He directed them to ship the cargoes to Charleston. The shipping documents consisted of bills of lading, charter party, consular invoices for entry at the custom-house, certificates of analysis and weight in Hamburg, and memorandum invoices. The declarations before the United States consul, at Hamburg, were made by Radde, as owner, and they named the plaintiff as the consignee at Charleston; and they and the consular certificates named Charleston as the intended port of entry. The invoices referred to in, and annexed to, the consular certificates, named the plaintiff as the consignee. The bills of lading set forth that the kainit was to be delivered at the port of Charleston, at the Atlantic Phosphate Company's

wharf, on Ashley River, "unto Mr. J. C. Grafflin, or his as-
signs." The Hamburg declarations and invoices and consular
certificates, were presented by the plaintiff at the custom-
house at Baltimore, and he made oaths to entries, before a
deputy collector at the custom-house there, that the goods
were consigned to " J. C. Grafflin, Charleston," and the papers
were verified by the collector of customs at Baltimore, and
were passed by the cashier of customs at that custom-house.
These papers and the bills of lading, in this condition, for all
the cargoes (the bills of lading probably indorsed in blank by
the plaintiff, though this is not clear), were put by the plaintiff
into the hands of Dunan, at Baltimore, and Dunan sent them
all to Pelzer, Rodgers & Co., before January 25, 1881, with in-
voices made out in his (Dunan's) name, for the five cargoes in
question. On that day, Dunan wrote to the company as fol-
lows: "Atlantic Phosphate Co., Charleston, S. C. Gentlemen,
I wish to withdraw all my invoices sent you with the docu-
ments for these cargoes, and substitute instead the enclosed
invoices from Mr. John C. Grafflin, as all these cargoes came
out in his name, and you will please return to me my invoices,
by return mail. In remitting for these cargoes, please remit
in name of John C. Grafflin, through me. In the future, I
will always furnish invoice in favor of name in which the
cargo comes forward. I enclose you herewith Mr. John C.
Grafflin's invoices for the cargoes which are now coming for-
ward, and for which you have the documents." In compli-
ance with this request, the invoices which Dunan had sent
were returned to him by the defendant, and it retained the
invoices from Grafflin. All this took place before any of the
five cargoes arrived at Charleston. The following is the form
of one of the substituted invoices: " Baltimore, January 15,
1881. Atlantic Phosphate Co., Charleston, S. C., bought of
John C. Grafflin: A cargo of genuine kainit, shipped per
Batavia, Capt. G. Linde, to Charleston, S. C., weighing 400 tons,
sold at $7.50 per ton," etc. The total amount of these invoices
was $14,450.42. At this time, Pelzer, Rodgers & Co. had in
their possession a power of attorney, dated August 31, 1880,
executed by the plaintiff, appointing the members of that firm,

five in number, by name, or either of them, his attorneys, to enter in his name, at the custom-house at Charleston, all merchandise which might thereafter be imported by him, or which might arrive consigned to him, or in which he might be interested as principal or otherwise. When the several cargoes arrived at Charleston, Mr. Inglesby, one of the firm of Pelzer, Rodgers & Co., acting under this power of attorney, entered them at the custom-house there in the name of the plaintiff. The entries described the merchandise as "imported by John C. Grafflin," and were signed "John C. Grafflin, per Thos. S. Inglesby, Atty.," and Inglesby took the entry oaths, as agent of the owner, to the invoices and bills of lading presented on entry, and in each swore that, to the best of his knowledge, J. C. Grafflin was the owner of the goods "mentioned in the annexed entry."

On these papers, the defendant received and accepted the cargoes and then refused to pay the plaintiff for them. He had confidence in the pecuniary responsibility of the defendant, and, therefore, was willing to deliver the cargoes, and waive any lien on them, and accept the defendant as his debtor. The defendant did not and does not make any complaint as to the quality of the kainit. No objection based on a breach of the contract of May, 1880, as to the lateness of delivery, was made until after the five cargoes were received. The plaintiff if advised at the time of any such claim, could have sold the cargoes elsewhere. He bought the cargoes, but he did not assume the contract, and he was under no obligation to fulfil it or to deliver the cargoes. But the defendant, in accepting the cargoes from him, on all the facts of the case, as above set forth, entered into the relation of purchaser of the cargoes from him, to be paid for on delivery, without reference to any claim against Radde or Dunan for a breach of the contract of May, 1880. It was admitted, at the trial, that the damages for such breach were $10,000.

At the close of the trial, the defendant prayed the following instructions to the jury, each of which was refused by the court, and to each refusal the defendant excepted: "(1.) If, from the testimony, the jury believe that the Atlantic Company

never requested Grafflin to sell them these cargoes, and that there was no agreement between Grafflin and the Atlantic Company for the sale by Grafflin, and the purchase by the Atlantic Company, of these cargoes, the action cannot be supported, and the verdict should be for the defendant. (2.) If, from the evidence, the jury are satisfied that the Atlantic Company purchased these cargoes from Radde, and that all that Grafflin did was to advance money to Radde or furnish a credit to him, and that he received the bills of lading from Radde as security for his advances, then Grafflin had only a special property, and his transfer of the bills of lading to the Atlantic Company was not a sale, and he cannot maintain an action for goods sold and delivered. (3.) To produce a change of property from the shipper to the consignee, it is essentially necessary that the goods should have been sent in consequence of some contract between the parties by which the one agreed to sell and the other to buy: (4.) If the jury believe that Grafflin was aware of the contract of sale made by Dunan for Radde to the Atlantic Company, and that the transfer of the bills of lading by Grafflin to the Atlantic Company was in pursuance of, and in execution of, that contract, then there was no sale by Grafflin to the Atlantic Company, and the plaintiff cannot recover. (5.) If Grafflin had a lien on these cargoes for his advances to Radde, and parted with the goods without any agreement by the Atlantic Company to pay his advances, he has lost his lien and must look to the party to whom he advanced, for his redress."

The Circuit Court instructed the jury as follows: "If the jury find, from the evidence, that the defendant, through Dunan, purchased from Radde, upon a contract made between Radde and the defendant, the kainit mentioned in the pleadings and evidence, and that the plaintiff made the advances to Radde for the purchase of the kainit, and had the bills of lading and invoices made out in his name as the proof of his ownership and the amount of his advances, and forwarded to Pelzer, Rodgers & Co. his power of attorney authorizing them to enter the said merchandise in his name as owner, they being the agents of the Atlantic Phosphate Company, and to deliver

the same to the said company, which accepted the merchandise, then the jury must find for the plaintiff the amount of the plaintiff's advances on the cargoes in suit, although they may find that Radde or Dunan did not faithfully perform the contract spoken of above, the claim of the defendant for damages, if any, being against them and not against the plaintiff." To this instruction the defendant excepted.

The jury having come in with a verdict for the plaintiff for $15,450.42, with interest from the date of the delivery of each cargo, the defendant prayed the court to instruct the jury that interest was not due on open account. The court ruled that interest was due, and so instructed the jury, and the defendant excepted. The verdict was then rendered for $15,450.42, "with interest on the amount of each cargo from the date of delivery thereof, being five days after the date of entry," all objection to the form being waived.

The facts of the case, and the views before stated as to the relations of the parties, show that the propositions contended for by the defendant were properly rejected, and that there was no error in the instructions to the jury. Indeed, the court might properly have directed a verdict for the plaintiff. A contract of sale by Grafflin to the defendant, and of purchase by it from him, arose, in judgment of law, out of the undisputed facts. The plaintiff had become the owner of the goods. The defendant, by the acceptance of the cargoes under the documents, was estopped from treating him as other than owner. It abandoned, so far as the plaintiff was concerned, its relation with Dunan and Radde, and its claim for damages, and cannot now alter the position of the plaintiff to his detriment.

The "advances" spoken of in the instruction given were the same as the amount of the "invoices" there spoken of, made out in the name of the plaintiff. The amount of both was $15,450.42, and that was the amount of the recovery, being the sale price. There was no error in the form of the instruction, to the prejudice of the defendant.

There having been a contract of sale, by mutual assent, and the contract having been executed by the vendor, by the deliv-

ery of the goods, the liability of the vendee to pay for them on delivery, in the absence of other terms, accrued, and the law raises an implied contract to pay interest, from delivery, on the purchase money, which was liquidated by the terms of the invoices in the name of the plaintiff, received and retained by the defendant. Such is the rule of the general commercial law. *Dodge* v. *Perkins*, 9 Pick., 368, 388; *Foote* v. *Blanchard*, 6 Allen, 221; *Van Rensselaer* v. *Jewett*, 2 Comstock, 135; *Esterly* v. *Cole*, 3 Comstock, 502. The case is not one of an open running account, but is of the class where there is a stipulated term of credit, which has expired.

We do not find anything in the decisions in South Carolina which would forbid the allowance of interest in the present case. In *Rice* v. *Hancock*, Harper, (S. C., Law), 393, in 1824, interest was disallowed on a book account for goods, because, although there was a special agreement to pay for the goods in cotton in sixty days, and otherwise to pay interest after sixty days, there was no count on the agreement. A like decision was made in *Schermerhorn* v. *Perman*, 2 Bailey, 173, in 1831. In *Lindsey* v. *Bland*, 2 Spear, 30, in 1843, on a count for negroes sold, but no count for interest, interest was allowed after twelve months, because a twelve months' note was to have been given. In *Ancrum* v. *Slone*, 2 Spear, 594, in 1844, the rule is stated, that interest is allowable on a liability to pay money, if the sum is certain, from the time when, by construction of law, the payment is demandable. In *Kennedy* v. *Barnwell*, 7 Rich., S. C., 124, in 1854, under a contract to pay a fixed sum for digging a canal, no time of payment being mentioned, interest was allowed from the completion of the work. In *Kyle* v. *Laurens Railroad Co.*, 10 Rich., S. C., 382, in 1857, interest was allowed on the value of cotton lost by a common carrier, on the ground that the cotton was a cash article at the place of delivery, and its value was taken on a cash sale, as cash lost by the plaintiff, who was, therefore, entitled to interest on the value. In *Arnold* v. *House*, 12 So. Car. 600, in 1879, and in *Childs* v. *Frazee*, 15 So. Car., 612, in 1880, interest was recovered against a purchaser of land for cash at a judicial sale.

In the present case, the objection made at the trial was not because of the want of a count for interest, but because interest was "not due on an open account." The case was not one of an open account, in the sense of any rule as to interest, and the holding of the court, that interest was due, was correct.

*Judgment affirmed.*