S. B. BEATTY v. ANN J. SNOUFFER, Administratrix, and FRANCES BENJAMIN and VIRGINIA MCCLELLAND, Appellants.

Estates of decedents: CLAIMS: ALLOWANCE: EVIDENCE. In this proceeding to establish a claim against an estate the evidence while in conflict, is held to be sufficient to support the order of the trial court allowing the same.

Same: EVIDENCE: TRANSACTIONS WITH A DECEDENT. Where it appeared that decedent came into possession of funds belonging to claimant in his absence and through another, the testimony of claimant as to the amount received by decedent was not objectionable under section 4604 Code.

Same: CLAIMS: INTEREST. A claim once allowed with the approval of the administrator should draw legal interest from that date, even though the allowance was set aside at the instance of an interested party and afterward re-established.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

TUESDAY, APRIL 14, 1914.

A claim of S. B. Beatty, in due form, was presented to the administratrix of the estate of J. J. Snouffer, deceased, who, on December 18, 1906, consented to its allowance, and

it was allowed by the clerk of the district court on the following day. On March 23, 1911, on motion of Mrs. Frances Benjamin, a daughter of deceased, the order of allowance was set aside; a demurrer to the application having been overruled. Trial was had to the court, and on May 6, 1912, the claim was established, without interest. Both parties appeal; that of plaintiff being docketed separately. *Reversed* on plaintiff's appeal, and *Affirmed* upon that of defendant.

*J. H. Preston* and *M. J. Donnelly,* for appellants.

*Jamison, Smyth & Hann,* for appellee.

LADD, C. J.—I. The claim of $1,195 was allowed S. B. Beatty against the estate of J. J. Snouffer, deceased, on December 19, 1906, with the approval of the administratrix, and was based on a ledger account of the deceased showing a balance of that amount owing the claimant. This much was well established by the evidence. The deceased had held notes and securities for the claimant pending some family troubles, and this is claimed to have been the balance on hand, and the only debatable question in the case is whether certain payments for the claimant were made before or after the entry of this balance in the ledger.

1. ESTATES OF DE-
CEDENTS:
claims: allow-
ance: evidence.

On the 11th day of November, 1905, Snouffer paid for claimant attorney's fees to Jamison & Smyth $1,325, and on December 11, 1905, $450 to Smith & Smith and M. P. Smith. These, if made after the date of the entry, would more than exhaust the balance on hand.

It is difficult to ascertain the facts with any degree of certainty from the record before us. On the claim as filed was pasted a typewritten statement, signed by the administratrix, in words following: "Cedar Rapids, Iowa, June 1, 1906. This is to show that Mr. J. J. Snouffer had in his hands money belonging to Mr. S. B. Beatty in the sum of one

thousand one hundred ninety-five ($1,195) dollars at the time of his death, which is a just and valid claim against the estate of said J. J. Snouffer as shown by the books of said J. J. Snouffer.''

Mr. Smyth testified that, as he recalled it, the claimant and the administratrix were in the office of Jamison & Smyth at the time and talked the matter over, and that the administratrix said that she ''had looked it up on the books and knew it was correct,'' and, further, that she would pay for it. He testified further that Mr. Jamison dictated a statement to the typewriter at the time. Mr. Jamison had a like recollection, and testified further that the deceased, at the time $1,325 was paid to his firm, said to him that he then held $4,000 or $5,000 of claimant's money in his possession. The clerk in the office also testified that the administratrix was present when the paper was dictated and signed, and that he thought claimant was also there. On the other hand, the administratrix testified that she had no such conversation, and that she assented to the claim at the suggestion of Mr. Jamison. According to claimant's story, he was in Montana at the time the above statement was signed, but that he had a conversation with the administratrix before going in which she had said the amount claimed was due him, and that ''the books showed it''; that upon his return he had called her attention to the fact that the account was in Snouffer's handwriting, and she had said, ''Yes, she had signed it, and it was correct.'' He testified further that the deceased had shown him his ledger exhibiting a balance owing him of $1,195 in Snouffer's handwriting just before he went to Montana, where he remained a year; that he left for that state in the fall, late in the fall. ''I would say November or December.'' On redirect examination he added: ''I gave the wrong day as to when I went to Montana. It was earlier.'' On being recalled, after the payments mentioned had been proven, he testified: ''I did not pay Judge Smith the $450. It was paid out of my account. I did not pay the $1,325 to Jamison & Smyth. What was owed

to me after the payment due each one, I gave Mr. Snouffer that money, and he paid it except Crosby, I think. I don't know whether I gave the money or check. I say that I knew Snouffer owed me $1,195. When he negotiated this settlement, I paid it, and still let him owe me the $1,195." This was without objection, and tended to explain how the balance may have continued on the book unchanged, and that the payments were before his departure for Montana.

Enough of the evidence has been recited to indicate that there was room for either conclusion as to whether these payments had been made by deceased from money in his hands exhausting this balance. The finding of the court, as is conceded, must be accorded the same effect as the verdict of a jury. We entertain much doubt as to the correctness of the court's conclusion. It certainly has evidence for its support, and, for this reason, we cannot interfere.

II. In the course of his examination, claimant was asked: "How much did Mr. Snouffer receive of money and property in his hands while he was taking care of your matters?" Objection that the witness was incompetent under section 4604 of the Code was overruled, and the witness answered: "He had nearly $5,000 at one time—$4,000—well put in $5,000." His previous testimony disclosed that deceased obtained his (claimant's) notes and securities from Hedges in claimant's absence, so that the inquiry did not necessarily involve a transaction between him and the deceased, and the court rightly did not so assume when the record indicated otherwise. There was no error.

2. SAME: evidence: transactions with a decedent.

III. The court, in allowing the claim, excluded interest prior to May 6, 1912, the date of the entry. It was for a balance owing by the deceased at the time of his death, and we know of no reason why the indebtedness should not draw interest at the legal rate from the time of the allowance of the claim when first filed on December 19, 1906. It had been allowed with the approval of the

3. SAME: claims: interest.

administratrix, and on the subsequent trial this was confirmed. The order of allowance, then, should have been reinstated, or interest from December 19, 1906, should have been included.

On plaintiff's appeal, reversed, but with costs, except for printing brief taxed against plaintiff. On defendant's appeal —*Affirmed*.

DEEMER, GAYNOR, and WITHROW, JJ., concur.