## EILEEN TURK *v.* ELISE A. GROSSMAN

[No. 72, October Term, 1940.]

*Decided January 3rd, 1941.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Arthur W. Machen* and *Charles C. Wallace,* for the appellant.

*William L. Rawls* and *William L. All,* with whom were *William L. Marbury, Jr.,* and *Marbury, Gosnell & Williams,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The problem in this case has arisen on the distribution of a decedent's estate. The appellant, trustee under the will of Heinrich Turk, and his widow, excepted to the allowance made to a former wife of a lump sum of $25,-500 with interest, to represent or replace an annuity which the decedent had agreed to pay that former wife during her life. The sum is greater than any estimate value of the annuity, and the claim to it is founded on an alleged compromise agreement, acquiescence and estoppel. The exceptions were dismissed, and the appeal has followed.

Many of the introductory facts have been recited in the opinion of a former case, *Turk v. Grossman,* 176 Md. 644, 6 A. 2nd 639, and need not be repeated with the same fullness. The husband died in November, 1934, and his will, probated in Baltimore County, appointed his wife of that time, Eileen Turk, and a brother, Karl Turk, Sr. executors. By this former wife, now Mrs. Grossman, he had one child, now a Mrs. Roberts, and by the second wife, two minor children. All are living. On October 14th, 1925, prior to a divorce from the former wife, the husband had entered into a valid agreement to transfer to her stock of a corporation owned by him, and her residence, and to pay her the yearly sum of $1500 for life; and the annuity was paid until shortly before the death of decedent, when $325 was due and unpaid. The will ignored the child of the first marriage, and she filed a caveat to its probate on January 12th, 1935.

At the time of the death and for some years afterwards, the assets of the estate appeared far from suffi-

cient to pay the annuity for any considerable time in the future, and there were other debts. At first a claim for continuance of the annual payments as parts of a preferred debt was filed in the Orphans' Court. A discussion of the claim of a preference followed between Mr. Theodore R. McKeldin, representing the claimant, and Mr. Edward H. Burke, who, with Mr. Philip Sachs, represented the executors; and it is contended for Mrs. Grossman that in this discussion the alleged compromise was made, Mr. Burke, as it is supposed, having agreed to payment of the dividend on that sum to avoid delay from assertion of the preference. On May 27th, 1936, Mr. Burke wrote Mr. McKeldin asking whether his client had "decided as yet what she intends to do with respect to the proposed settlement of her claim." The reply, if written, is not in the record. On December 8th, of the same year, Mr. Burke wrote Mr. McKeldin that he thought Mr. McKeldin realized that Mrs. Grossman was not a preferred creditor, and that Mr. Burke thought she could file her claim as a general creditor and share in the distribution, in such amount as the court might determine, at a meeting of creditors to be arranged. After that letter a difference of understanding seems to have arisen. Mr. McKeldin abandoned his claim for a preference, and, as he testified "a compromise claim for $25,500 was then filed." Mr. Burke, on the other hand, testified that he explained to Mr. McKeldin orally that Mrs. Grossman could not be paid as a preferred creditor, and pointed out as her proper procedure that of commuting the annuity upon the basis of Mrs. Grossman's life expectancy, to be ascertained from some insurance man and his mortality tables. Mrs. Grossman was then thought by her counsel to be 61 years of age, and the expectancy of such a women was found to be 17 years, and the claim was made up by multiplying the annual sum of $1500 by 17, but without commutation. Thus the claim of $25,500 was arrived at, and was evidently the result of oversight in making the calculation. The dividend then available, 2.3363 per cent. was paid on that total, nevertheless, and

this fact is advanced as confirmation of the alleged compromise for the whole claim. Mr. Burke testified, however, that he called Mr. McKeldin's attention to the failure to commute the sum, but discussed with Mrs. Turk and Mr. Sachs the wisdom of incurring the expense of a controversy over the difference in dividend, and decided that they should not do so, but should merely pay the claim and pass the point. Mrs. Grossman was later found to be not 61 years old, but 58.

In this testimony the court does not find proof that a compromise affecting the larger, remaining, claim was made. The figure was arrived at by calculating all that Mrs. Grossman was entitled to, not a compromise amount. The direct testimony of the attorneys, with its conflict, shows no compromise. Only the one small dividend was considered, and agreement by Mr. Burke on an enlarged capitalization of the annuity for the further purpose was unlikely, for there was no further purpose in mind. He knew that the amount was figured out by mistake, as his letter shows. He must be presumed, moreover, to have known that merely as attorney he had no authority to make a compromise. *Abrams v. Eckenrode,* 136 Md. 244, 245, 110 A. 468; *Peckham v. German Fire Ins. Co.,* 91 Md. 515, 530, 46 A. 1066, 50 L. R. A. 828, 80 *Am. St. Rep.* 461; *Maddux v. Bevan,* 39 Md. 485, 493. And he must be presumed to have known that even a compromise by the executors required the approval of the court to render it effectual. Code, Art. 93, sec. 271. While this court has sanctioned approval after a good compromise had been made, *Blum v. Fox,* 173 Md. 527, 537, 197 A. 117, it has never placed the action entirely within the discretion of the personal representative, and thus dispensed with the statutory requirement. Even if Mr. Burke had not known of these limitations on authority, the existence of them would prevent an effectual compromise without approval by the court.

An authorization in the will to the executors to do all that the testator might do personally could not, as the court

interprets it, be taken to authorize their making any addition to a debt due by the estate. There are many acts which a testator might do personally, such as the complete release of a debt, which nobody would include within that authority, and we think the addition to the claim here is equally outside of it. The act of abstaining from contesting the dividend first claimed and allowed to Mrs. Grossman, even if it were not explained otherwise, as it is, would not support an inference of compromise, or ratification of a compromise of the whole claim, which at that time was assumed to have no hope of payment at all. *Fledderman v. Fledderman,* 112 Md. 226, 248, 76 A. 85; *Miller v. Dorsey,* 9 Md. 317; *Pole v. Simmons,* 49 Md. 14, 20. A claim once passed without contest may subsequently be resisted. *Bogart v. Wills,* 158 Md. 393, 406, 148 A. 585. And a newly arisen condition of solvency was one to be dealt with anew. Compare *Bowers v. Hammond,* 139 Mass. 360, 31 N. E. 729. And as for ratification of a compromise by the attorney, the court fails to find that there was one which could be ratified.

There was, indeed, no reason for accepting an enlarged claim. It was originally one on simple contract, in quality substantially the same as a chain of promissory notes, and without any right at all to a preference. The preferences specified by statute as permitted in Maryland do not include any on such a claim, and it is provided that "all other just claims shall be on an equal footing without priority or preference." Code, Art. 93, sec. 123. And the claim being then treated as one against an insolvent estate, it appeared necessary to take the commuted value as a basis of distribution on it, if there was to be payment of any more than one or two instalments of the annuity. "There are many cases falling within the jurisdiction of this court, in which it becomes necessary to put a present value upon an estate for life. As * * * where a person charged with the payment of an annuity becomes insolvent, or dies leaving an insufficiency of assets to pay all; or where there is not a sufficiency of assets to pay all the legacies and annuities

given by the testator." *Williams' Case,* 3 Bland 186, 221; *Ex parte Thistlewood,* 19 Ves. 236, 244; *Re Hargraves,* 44 Ch. D. 236; *Re Pink,* [1927] 1 Ch. 237. And there is an indulgence to the annuitant in thus substituting, for the future payments for which he has contracted, and which cannot be paid when due, a present lump sum indebtedness on which a dividend may be paid on an equal footing with other claims. *Yates v. Yates,* 28 Beaven 637; *Re Beeman,* [1896] 1 ch. 48

If any committal by Mrs. Turk, the exceptant, is to be found it must be in discussion and proceedings after that point.

In 1937, Mrs. Grossman raised the question decided in the previous case, of *Turk v. Grossman,* 176 Md. 644, 6 A. 2nd 639, concerning the disposition of the stock of the Porcelain Enamel and Manufacturing Company, which had been an asset of the estate. The ultimate outcome of that case was an addition to the estate of $60,000, which made the estate solvent, and gave rise to the question now to be decided, the payment of the claim under the annuity contract out of this larger amount. No party urges that the annuity payments be now made as they fall due; the lump sum payment is still acceptable to both, and is in effect agreed upon. It is contended by the annuitant, however, that her claim for $25,500 has been fortified by expressions of acquiescence on the appellant's part, and by estoppel arising in the further proceedings.

Jurisdiction of the further administration of the estate was assumed by the court of equity on February 21st, 1940, when taking up the distribution of the new fund.

Counsel employed by Mrs. Grossman and another creditor for the prosecution of the equity suit, Mr. Boyd B. Graham, after some delay, had Mrs. Turk, under the advice of her previous counsel, Mr. Sachs, unite in that suit as a party plaintiff. In her discussion of joining, she expressed to Mr. Graham an objection that after she had joined and incurred expenses she might be deprived of the fruits of the prosecution by the result of the will

case instituted by the daughter of the previous marriage, Mrs. Roberts. Mr. Graham answered that he could make no absolute promise but felt that Mrs. Roberts would dismiss her caveat if Mrs. Turk joined in the equity suit. Apparently there never was a promise of dismissal, but a little over three months after Mrs. Turk had joined, the caveat was dismissed. Mrs. Turk employed Mr. Graham to act as her attorney in the suit, as well as the attorney of the other complainants.

Mr. Graham, unaware of any question of Mrs. Grossman's claims for $25,500, stated to Mrs. Turk that the expenses of suit should be divided according to the amounts claimed respectively, and said Mrs. Grossman's claim was for $25,500. That sum, to Mrs. Turk's knowledge was taken by him as the basis of division of expenses, and she wrote Mr. Graham a letter stating that she would be responsible for the expenses in such proportion as her claim bore to the total claims of creditors. Whether she even told Mr. Graham that she thought Mrs. Grossman's claim too large is disputed. Mr. Graham thinks she never mentioned it; Mrs. Turk testified that every time the figure was mentioned she said it was too large, but Mr. Graham said it had been allowed in that amount by the executors. Mr. Graham's recollection is probably more reliable, as he would not have represented both women had he known of any difference between them. On February 28, 1940, however, shortly after the final settlement on the amount to be gained in the equity suit, Mrs. Turk, in a telephone conversation with Mr. Graham, having then objected to the amount which it seemed Mrs. Grossman was to receive, was told by him that she could protest, and she testified that this was the first knowledge she had that it was her privilege to protest, that it had never come up before. Mr. Graham then withdrew as the representative of Mrs. Turk, and continued as counsel for his first client, Mrs. Grossman. Mrs. Turk retained Mr. Wallace.

The court takes it to be true that Mrs. Turk did not previously, when the amount of Mrs. Grossman's claim

was mentioned, bring to Mr. Graham's attention that the amount was not undisputed. There had been a dispute. Mrs. Turk had heard Mr. Burke say it was not a proper claim, and she had decided that the dividend then in prospect was too slight to warrant a contest on the difference. Did her later silence when the amount of the claim was mentioned by Mr. Graham, commit her to an acceptance of distribution to Mrs. Grossman in that amount? The court cannot see that there is sufficient foundation for an inference of that intention. The acceptance of the figure of the claim as the basis of division of expenses, standing alone would be a dubious foundation for an inference of consent to payment of the claim ultimately. And an attorney's client, while represented by him, is so likely to relax watchfulness of her rights and see no need of herself asserting and protecting them, that a court should hesitate to seek in discussions between them ratifications or estoppels in respect to the rights of another client. The lack of any obstruction to changing her mind if she had once committed herself to acceptance of the amount, need not be dwelt upon further than to say that injury to the other client would be slight. Howard v. Carpenter, 11 Md. 259, 280; Re Dodds, [1890] 25 Q. B. D. 529.

The court is clear, too, that the dismissal of the caveat of Mrs. Roberts did not afford consideration for an agreement by Mrs. Turk to withhold objections to the amount of Mrs. Grossman's claim; it did not serve as inducement, and it did not follow in pursuance of a promise to dismiss the caveat. Only a hope of dismissal was held out to Mrs. Turk when she joined in the equity suit.

On the whole, the figure of $25,500 appears merely to have been made up by error in the calculation, and nothing substantial to prevent correction now is seen. The correction must, we think, be made.

It is urged on behalf of Mrs. Grosman that the capitalization should be at the amount required to enable her to buy another similar annuity. In England, where annuities are more familiar, and most of the judicial de-

cisions regarding them are to be found, a capital equivalent has been sought in the amount required to purchase government annuities. *Hicks v. Ross,* [1891] 3 Ch. 499; *Re Robbins,* [1907] 2 Ch. 8; *Re Brunning,* [1909], 1 Ch. 276. But as annuities are purchasable here only from private insurance companies, the prices must include such items as profits and agents' commissions, and would seem not to furnish the equivalent sought in capitalizing Mrs. Grossman's annuity. To repeat, the object of the calculation has been only to reduce that annuity to a lump sum basis for her sharing in a present distribution of the assets of the insolvent estate, and prices of insurance companies must have the additional objects. The calculation here is to include fewer elements.

The old rule applied in Maryland, that an allowance to a women in lieu of her dower should be estimated, according to her age and health, at a fraction of the principal sum to be shared, should not, we think, be applied. See *Dorsey v. Smith,* 7 H. & J. 345, 366. At the time of the earlier decisions the available mortality tables were inadequate, and the formulas used seemed to afford the best measures for all capitalizations of life interests. *Williams' Case,* 3 Bland, 186, and see note *Brantley's Ed.* 201. But that is not true now, since the elaborate development in subsequent years of mortality tables built up from the facts of many lives in many parts of the country, and it is unnecessary to extend the application of the old rule as a means of arriving at the lump sum proper for Mrs. Grossman's annuity. The sum must be sought by estimating her life expectancy from mortality tables, and by commuting the annuity for that number of years at the rate found at the time of the decedent's death. The time of the death is that for which the calculation is to be made. Mrs. Grossman's condition of health will be taken into account to the extent that it may affect such an estimate. The figures are not ascertainable from the evidence in the record, and the case will be remanded for their ascertainment from such evidence as the parties may have to offer.

The court is of opinion that no interest should be allowed on the debt. In administering the estates of decedents in this State interest is not allowed on claims other than those on contracts which undertake the payment of interest, and render the amount of it part of the debt. There is no statutory provision for the allowance, and common law principles seem to deny it. During an administration there is no use of money for which compensation might be asked and there is no fault for the delay in payment. The law requires time for administration, and the delay is the law's delay. See *Baltimore City Passenger Ry. Co. v. Sewell*, 37 Md. 443, 456. The claim for the lump sum substituted by law is not, we think, one on which interest could for any reason be asked. This is the rule we find proper in administration of estates, and while the administration here is in the court of equity now, it is still an ordinary administration, and the principles of ordinary administration should govern.

*Order reversed, and cause remanded for further proceedings in accordance with this opinion, with costs.*