## HIGHTSTOWN RUG CO. et al. v. NATIONAL SAVINGS & TRUST CO. et al.

### No. 9375.

United States Court of Appeals
District of Columbia.

Argued Jan. 20, 1947.

Decided May 26, 1947.

Mr. Herbert S. Ward, of Washington, D. C., with whom Messrs. Harry L. Horton, Scott D. Kellogg and J. Benjamin Simmons, all of Washington, D. C., were on the brief, for appellants.

Mr. George L. Hart, Jr., of Washington, D. C., with whom Mr. Arthur G. Lambert, of Washington, D. C., was on the brief, for appellee Benjamin S. Bell.

Mr. Arthur P. Drury, of Washington, D. C., for appellees Weinberg, Baum and National Savings & Trust Co., executors and trustees.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justice.

CLARK, Associate Justice.

This is an appeal from a District Court order directing the executors and trustees of the estate of Morton H. Goldenberg to compute and allow interest on certain claims against the estate. Appellants, who are creditors with non-interest bearing claims based on open accounts, brought the motion for the order, but appeal from the order because they contend they are entitled to more interest than the court allowed. The order appealed from allowed appellants, referred to as merchandise or general creditors, interest at the rate of one and one-half per cent. per annum on their non-interest bearing claims, while allowing other creditors, referred to as bank creditors, having claims expressly providing for interest, interest at the expressed rate. The executors and one of the creditors having an interest-bearing obligation are appellees.

Goldenberg died in 1930, domiciled in Maryland, where primary administration is being carried out. The proceedings in the case at bar involve the ancillary administration being carried out in the District of Columbia where most of the assets of the estate were located. Jurisdiction of the estate was assumed by the court below in the spring of 1932, at which time the probate proceedings were terminated. The estate owed over $1,000,000 in open accounts, mainly with merchandise creditors, and over $300,000 in interest-bearing obligations. The estate appearing insolvent, a large share of the merchandise creditors agreed to accept 45 per cent. of the principal of their claims in full settlement. These creditors are not involved here. The merchandise creditors who are involved in these proceedings are those who elected to accept payment of their claims on the same basis, pro rata, and in the same manner as the creditors having interest-bearing claims.

The issues here presented revolve around the right of these creditors holding non-interest bearing claims to receive interest on them. The question of the payment of interest first arose around 1935. Prior to then, in 1933, the first dividend had been paid amounting to 25 per cent., at which time the bank creditors were paid interest at the expressed rate on 25 per cent. of their claim in addition to the dividend. After a series of conferences, meetings, and hearings before the court auditor, to whom the matter had been referred in 1934, a procedure was developed whereby on the payment of the second dividend, which was 10 per cent., the bank creditors received no interest and an adjustment was made to bring the general creditors on a par with the bank creditors by paying the general creditors 25 per cent. of the interest accrued to them at the legal rate of 6 per cent.; and thereafter all subsequent dividends were made pro rata based on a fixed percentage of the original claims. Portions of the auditor's report, ratified by the court on June 27, 1935, which bear on this point and have a further important bearing on the issues of the case are as follows:

"4. * * * Thereafter, at a hearing held on February 21, 1935, after various adjournments, the following occurred: Mr. Koenigsberger: * * * In the account as filed, which shows the first dividend to creditors, the banks and the Estate of Julius M. Goldenberg, which held claims interest-bearing by their terms, were allowed dividends on their claims plus interest in accordance with the terms of the obligations, but no interest was allowed on the claims of other creditors, principally merchandise creditors, whose claims were not by their express terms interest-bearing. Although there is no statute on the subject, it is believed to be consistent with the practice in this jurisdiction and elsewhere to allow interest on these claims from November 14, 1931, that being 13 months after the grant of letters testamentary by the Orphans' Court of Baltimore, in which Court the will and codicil were probated and the letters testamentary were originally issued.

* * * * * *

"10. Schedule 'C' is a statement of payments of 25 per cent., made by said Executors to certain creditors, under the authority of said order of October 4, 1934, and shows the balances of the claims of said creditors, exclusive of interest. The auditor finds t⋯ ⋯ those creditors who have received only 25 per cent. of the principal of their claims, and whose claims do not specifically provide for interest, are entitled to receive, prior to or at the time of payment of future dividends, 25 per cent. of the interest on their claims from November 14, 1931, in addition to the payments heretofore made to them." This interest was allowed by the auditor in his report filed on August 31, 1937, which was later approved by the court and paid.

At the time of these proceedings below, all creditors here involved had received an amount equal to 100 per cent. of the face of their claims. However, by the time of the declaration of what was purported to be the final dividend, the executors had acquired doubt as to whether the position they had taken in 1935 was correct, and whether the general creditors were entitled to any interest. They accordingly made their final payment in an amount which together with the prior dividends equaled the face amount of the general creditors' claims. The general creditors thereupon filed the motion resulting in the order here

appealed from. The court below based his order granting appellants interest at the rate of one and one-half per cent. on the auditor's finding 10 set out above, the said rate having been allowed by the auditor in his report filed August 31, 1937, which the court felt he was legally bound to follow.

Appellants' main contentions are that the court erred in finding that the auditor's report constituted a limitation upon the rate of interest to be computed on the claims of the merchandise creditors, in finding that no agreement that the merchandise creditors were to receive interest existed between them, the executors and trustees of the estate and the general creditors whose claims were on interest-bearing obligations, and in allowing interest at the rate of one and one-half per cent. in lieu of interest at the legal rate.

The question raised in the brief of the appellee executors as to whether Maryland or District of Columbia law governs the instant proceedings is disposed of by our decision in Duehay v. Acacia Mut. Life Ins. Co.[1] and authorities there cited, where we said: "The long established rule is that 'in regard to creditors the administration of assets of deceased persons is to be governed altogether by the law of the country where the executor or administrator acts, and from which he derives his authority to collect them, and not by that of the domicil of the deceased.'" (citing cases). Thus, the case of Turk v. Grossman,[2] relied on by appellees, is not binding on this court.

As far as the law in this jurisdiction is concerned, there is no statute which supplies an answer to the issues presented, and we have been referred to no decisions of this court in point. We believe the correct rule to be that in paying the debts of a decedent, interest should be allowed on all claims which are of a nature entitled to interest, irrespective of whether they are interest-bearing by their terms or not.[3] Or,

as one writer states it, "Interest is not allowable from a decedent's estate, where, from the nature of the debt, no interest was due; * * *."[4] While we recognize that there is some authority to the contrary,[5] wherein the rule is applied that interest is allowed only on those obligations interest bearing by their terms, we think the prevailing view and best view is as we have stated.[6] Such a position is adopted by a great majority of the jurisdictions in cases involving the administration of bankruptcy or insolvency proceedings where the assets turn out to be more than sufficient to pay the principal of all claims. See Annotation 39 A.L.R. 458, wherein the following majority rule is stated: "In general, the courts, while stating or recognizing that interest on claims of equal rank against a bankrupt or insolvent will not be computed where the assets of the estate are not sufficient to pay the principal of the debts, hold that if the estate does in fact turn out to be sufficient to meet all demands and leave a surplus over, interest on all claims, whether they are interest-bearing or not, will be allowed the creditors during the administration of the estate in bankruptcy, or by a receiver or assignee." Since similar considerations apply to the administration of both types of estates the legal principles applying to them naturally should follow a similar pattern.[7] Such a comparison is particularly pertinent to the case at bar since the decedent's estate appeared insolvent at the outset of the administration, but now, after more than 15 years of administration, has become solvent to the extent that the existing creditors have been paid an amount equal to the face value of their claims.

Several points remain for discussion, the first of which is whether the claims presented by appellants are of a nature which are entitled to interest. We think they are. As far as we can determine from the record, appellants' claims are based on transactions involving the sale of merchan-

---

[1] 70 App.D.C. 245, 105 F.2d 768, 771, 124 A.L.R. 1268.

[2] 179 Md. 229, 17 A.2d 122.

[3] 2 Woerner, American Law of Administration (3d Ed.1923) Sect. 411.

[4] 2 Schouler, Wills, Executors and Administrators, Sect. 1440.

[5] Turk v. Grossman, supra.

[6] Williams v. The American Bank, 4 Metc., Mass., 317; Mowry v. Peck, 2 R. I. 60; Beatty v. Snouffer, 164 Iowa 746, 146 N.W. 844; Town of Panton v. Noonan, 112 Vt. 138, 22 A.2d 174. cf. Estate of Olvera, 70 Cal. 184, 11 P. 624.

[7] Brown v. Lamb, 6 Metc., Mass., 203.

dise on terms of 60 days credit to the decedent during his life time. We think this point is governed by the case of American Iron & Steel Manufacturing Co. v. Seaboard Air Line Railway,[8] where the Supreme Court stated: "On the part of the railway company it is contended that interest could not have been recovered on this claim even in an action at law. On the authority of (cases cited) it is argued that the right to interest is a matter of agreement, and can be recovered as a part of the debt only where it has been reserved in the contract, or where a promise is implied from the character of the note or instrument evidencing the debt. The railway therefore insists that as the intervenor sold the supplies, without taking a note and without securing a promise to pay interest, there was no right to recover interest as an incident of the debt, although a jury, as a matter of discretion, might have allowed it by way of damages for unreasonable delay in making payment.

"On the other hand, counsel for the Iron & Steel Company contend that as these supplies were sold on a credit of thirty days a promise was implied to pay interest after that date as an incident of the debt itself. From (cases cited), we reach the conclusion that whatever may have been the English and early American rule, the tendency in Virginia, as elsewhere in this country, is to allow interest on contracts to pay money from the date that the debt becomes due. 2 Minor's Institute, 381. The sale here of supplies on thirty days' credit was not, as argued, a mere agreement for the benefit of the buyer that it should not be sued before the expiration of that time, but was the fixing of a definite date for payment of the purchase money. The acceptance of the supplies, sold on those terms, was equivalent to a promise to pay the money on that day. Atlantic Phosphate Co. v. Grafflin, 114 U.S. [492] 500, 5 S.Ct. 967, 29 L.Ed. [221] 224. As payment was not then made, the Railway Company was in default, and interest began to accrue as an incident of the debt, recoverable as such, and not merely as damages to be allowed in the discretion of court or jury."

■ We turn now to the interpretation to be given the finding of the auditor pertaining to the allowance of interest. The statement by the auditor, set out above, does not set a limitation on the amount of interest appellants were entitled to as a whole. The clear meaning, we think, is as asserted by appellants, that as the bank creditors had previously, at the time of the first 25 per cent. dividend, been paid interest not allowed the merchandise creditors, and as had been expressed at the hearings before the auditor that it was the intention of the parties that the merchandise creditors be allowed interest, they should be put on an equal footing with the bank creditors by the payment to them of 25 per cent. of the interest on their claims. It was not a finding that appellants were to be limited to one and one-half per cent. interest throughout the entire administration, but was a summation of the action to be taken sometime in the future to remedy an inequitable situation existing because of certain erroneous action taken in the past, and consequently, was not determinative of the issues before the Court in this case.

■ In this disposition of the case it is not necessary to determine whether an agreement concerning interest existed between the parties. There appears to be no dispute concerning the time from which interest should run, or as to the rate of interest. The question as to whether the payments previously made to all creditors here involved should be considered as applying to interest, as is normally the fact, or principal, should be answered, we think, in view of the circumstances existing in the case, by the general rule applied to the administration of insolvent estates that interest is not paid, although it continues to run, during the period the assets are insufficient to pay the principal of the claims, but that if the estate proves sufficient to cover the claims in full, the interest will be paid, either in full or pro rata as the facts may dictate.

Reversed and remanded, with costs to be borne by the Estate.

---

[8] 233 U.S. 261, 34 S.Ct. 502, 504, 58 L.Ed. 949.